BARNES *v.* GAY.

A subsequent homestead right cannot cut off, or interfere with, a sale of real estate, where the debt was for the purchase money of the land.

A widow cannot sustain a claim of dower against the vendor, or those occupying his position, in a contract for the sale of real estate, where the husband never had the legal title, and the purchase money has not been paid.

Where in a proceeding in chancery, by a widow, to redeem certain real estate from a sale under a trust deed, and for a conveyance of the same, on the ground that the premises were the homestead, and that she was entitled to dower therein, it appeared from the petition and the sworn answer of the respondent, that the husband made a contract with J. B. in 1849 or 1850, for the purchase of the premises, for the sum of $150 ; that J. B. delivered a bond to the husband, conditioned for the conveyance of the lot, upon the payment of the purchase money : that payment was to have been made by the twenty-first of March, 1852; that the husband took possession, and resided thereon until his death ; that the widow and children remained in possession ; that the husband paid $60, and made improvements to the value of $800; that in the fall of 1851, the husband being indebted to the respondent, in the sum of $300, for goods, &c., sold and delivered, he assigned to him the title bond given by J. B., as security for such debt; that the bond falling due on the twenty-first of March, 1852, and the husband being unable to pay the balance due, the respondent paid the same, and took a deed from J. B., by agreement with the husband, by which it was contracted that if the husband should pay to respondent the balance due on the lot, with the sum previously due him, within six months, he would convey the title to the husband—to which intent a bond was executed by the respondent, and delivered to the deceased ; that the husband failing to pay at the expiration of the six months, and the bond becoming forfeit, it was delivered up by him to the respondent, and cancelled and destroyed, so that it cannot be produced, nor a copy of it; that the amount then due respondent was the full value of the lot; that in February, 1854, the respondent was about to sell the lot, to raise money, and the husband being desirous to redeem, he executed to respondent his promissory note for $500, the amount then due, payable in two years, with ten per centum

interest annually, which note respondent was to negotiate with one C., and secure by deed of trust on said lot, and upon payment of the note at maturity the husband was to have a deed of the premises; that the respondent negotiated the note to C., (who paid $500 cash on the same,) executed the deed of trust, and also gave to the husband a bond setting forth the agreement; and that when the note fell due, the husband failed to pay, and C. having advertised according to the provisions of the trust deed, on the first of April, 1856, sold the lot at public auction, when the respondent became the purchaser, for $665, and received a deed therefor; *Held*, 1. That the widow was not entitled to a conveyance of the premises, in her own right; 2. That the interest of the husband was divested by the sale made under the trust deed; 3. That the claim of the property as a homestead, could not be sustained by the widow ; and, 4. That the widow was not entitled to dower in the premises.

*Appeal from the Henry District Court.*

TUESDAY, OCTOBER 19.

IN CHANCERY. Bill to redeem, and for a conveyance of a lot in the town of New London, in Henry county. The complainant's bill represents, that in 1849 or 1850, her husband, Thomas Barnes, made a contract for the purchase of the lot, with one John Boak, for the sum of one hundred and fifty dollars, as evidence of which, Boak delivered Barnes a bond, conditioned for the conveyance of the lot upon the payment of the one hundred and fifty dollars ; that the price was fully paid up in 1853 or 1854 ; that the said Thomas took possession immediately upon the entering into the contract, and so continued until his death ; and she, with her family, the children of said Thomas, has been in possession continually since; that during his life, he, with her aid, made valuable improvements to the amount of fifteen hundred dollars; that by some arrangement unknown to her, save as she learns from rumor, after the purchase money was all paid, a conveyance of the lot was made to the respondent, as a security for some debt he had, or pretended to have, for goods sold, or money advanced, to the amount of one hundred and fifty dollars, as was then claimed, which deed is absolute on its face,

though taken as security; that Gay executed Barnes a
bond to convey the land to him upon the payment of five
hundred dollars, in two years from the date, which date is
not given, but was soon after the transfer from Boak to
Gay.

The petition further alleges, that the real debt from
Barnes to Gay, was a small amount, but that usurious in-
terest was included in the bond, and that the interest was
compounded; and she avers a readiness to pay the sum
due upon the bond, after it is purged of the usury. She
then states that the defendant is proceeding to eject her
from the premises by process of forcible detainer, and avers
that the premises were the homestead of the said Thomas,
and are now the homestead of herself and his family, as
his survivors, and that she has an estate of dower therein,
but not yet assigned.

The complainant then prays, that respondent may be
compelled to make answer to certain interrogatories in the
petition propounded, respecting the amount due him, the
usurious and compound interest, &c.; that he may be en-
joined in his process of forcible detainer; that the deed
from Boak to him, may be decreed to be a mere security,
and he decreed to convey to her; that her legal and equi-
table rights may take precedence of his deed; that her
dower may be assigned, and her homestead designated,
and her rights, as distinguished from those of the said es-
tate, be ascertained; and that the said Gay be compelled
to foreclose his security, as in equity he ought, wherein she
may show the equities involved, as they affect her, as a
party residuary in the estate of her said husband.

The complaint does not state at or about what time the
said Thomas Barnes deceased. An injunction was granted,
at the commencement of the suit, staying the action of
forcible detainer.

The respondent answered fully, admitting the con-
tract between Boak and Barnes, as in the year 1850, or
1851, but avers that payment by Barnes was to be made by
the 20th of March, 1852; he denies that Barnes paid in full,

Barnes v. Gay.

alleging that he paid but the sum of sixty dollars; and admits possession by petitioner and her husband, and that improvements were made to the value of $800, and no more. The respondent avers that the true statement of the transaction was as follows: In the fall of the year 1851, said Barnes, being indebted to him in the sum of nearly three hundred dollars, for goods, &c., sold him by defendant, for the trade in which Barnes was engaged, assigned to him the title bond given by Boak, as security for such debt; that but little of the purchase money was then paid, but ultimately Barnes paid about sixty dollars; that the bond falling due on the 21st of March, 1852, and Barnes being unable to pay the balance, the defendant paid the same, and took a deed from Boak, by agreement with Barnes, by which it was contracted that if said Barnes should pay defendant the above balance, (which was about eighty dollars), with the sum previously due him, within six months, he would convey the lot to said Barnes, to which intent a bond was executed by defendant and delivered to the deceased.    Defendant further avers, that said Barnes failing to pay at the expiration of the six months, and the bond becoming forfeit, it was delivered up by him to the defendant, and cancelled and destroyed, so that it cannot be produced, nor a copy of it; that the amount then due defendant was the full value of the lot at that time; that in February, 1854, the defendant was about to sell the lot to raise money for the necessities of his business, and the said Barnes being desirous to redeem, he came to defendant and made the following arrangement: Barnes executed to defendant his promissory note for five hundred dollars, the amount due him, payable in two years, with ten per cent. interest annually, which note defendant was to negotiate with one W. B. Chamberlain, and secure by deed of trust on the said lot; and upon payment of the note at maturity, Barnes was to have a deed of the premises; that the defendant negotiated the note to Chamberlain, (who paid five hundred dollars in cash on the same), and also gave the deed of trust, and the defendant then

executed to Barnes a bond to the foregoing intent. The respondent further shows that when the note fell due, said Barnes failed to pay, and said Chamberlain having advertised according to the provisions of the trust deed, on the first of April, 1856, sold the lot at public auction, when defendant bidding therefor the sum of six hundred and sixty-five dollars, became the purchaser, and received a deed therefor.

The defendant wholly denies that any usurious compound interest was charged, or anything save the original true consideration, with ten per cent. interest. He admits bringing the action to obtain possession, and denies complainant's interest in dower, and otherwise.

There is no evidence contained in the record, save copies of the instruments referred to in the bill and answer, which are made exhibits. The cause was heard on bill and answer, at the August term, 1857, when the court rendered a decree dissolving the injunction, and dismissing the bill. The complainant appeals.

*Palmer & McFarland,* for the appellant.

*Starr, Phelps & Robertson,* for the appellee.

WOODWARD, J.—We will examine briefly the claims of the complainant, presented in the prayer of her bill. It is to be observed, in the outset, that she appears to have relied upon the answer of the respondent, making the bill eminently one of discovery. There is no evidence in the case, except what is derived from the papers which are made exhibits, and the answer of the defendant, so far as it is responsive to the bill.

The petitioner first prays that the deed from Boak to Gay may be declared a mere security. This it is admitted to have been; but the rights of the parties depend mainly upon the subsequent transactions, which are not mentioned in the petition. The petition then prays, that Gay may be decreed to convey to her in her own right. This

could not be done. She has no right of this character. If the legal intent of the petition were sustained, it would result in a conveyance to the heirs at law of Thomas Barnes, and not to her in her own right. And if the bill could be sustained, we should be willing to regard it as a prayer for a conveyance to the proper uses and trusts.

We learn from the bill and answer together, that Boak conveyed to Gay, by agreement with Barnes, which was done as a security to Gay for his debt, to which was now added the sum paid by him to Boak. Gay gave a bond for a deed to Barnes. This continued the equity in the latter. But in February, 1854, Gay executed to Chamberlain a trust deed, authorizing him to sell in case the note of Barnes was not paid. That Barnes was a party to this transaction is, to some extent, at least, evidenced by the fact of his giving the note. At the same time, he took a bond from Gay for a deed, in case he should pay the note. So much we may consider as established; and the securities bearing the same date, there is sufficient to satisfy the conscience, that Barnes was a party, by consent, to the whole of the transaction.

There is nothing expressly showing that Chamberlain had such knowledge as should cause him to be affected by Barnes' equities; and therefore, the trust deed to him, and his sale under it, might, perhaps, cut off any right in Barnes, even though Gay was the purchaser. But, however this may be, we are statisfied, that if any circumstances affect Chamberlain with notice, the same will bring home to Barnes a knowledge of, and an assenting to, the trust deed. We have attempted thus to look at the case solely upon facts, which must be regarded as established by the bill or the answer, or by both, in order that the answer of Gay should not be taken as the *scienter* on the part either of Chamberlain or of Barnes.

Then, if Barnes is bound by the trust deed to Chamberlain, as we think he is, and if the sale by him was fairly made, (and nothing of the contrary nature is charged), Gay might become the purchaser, as well as any other

person. He is not affected in the act of purchase. If he is to be at all, it is by some of the prior circumstances, and from these his answer, fairly responsive to the bill, exonerates him. We conclude, then, that the interest of Barnes is gone, and that his legal representatives have no equitable interest remaining.

This brings us to the claim upon the property as a homestead. We are left entirely in the dark, as to the time when the improvements were made; and although the bill alleges that they took possession on the consummation of the contract with Boak, yet we are not satisfied that this means that they went into the actual occupancy as a homestead; for the amount of the purchase money, and the allegation of the value of the improvements, indicate that it was those improvements which rendered it actually tenantable, and tended to give it the character of a homestead. But more conclusive than this, are the facts that Barnes never had the title, and that the original debt was for the purchase, which a subsequent homestead right could not cut off.

Finally, the petitioner claims a right of dower in the land. That there is no legal title in which she is endowable, is manifest. Then, supposing a widow dowable in an equity, which we do not stop to determine, it becomes very doubtful whether there is an equity remaining here, to which an interest in dower could be attached. But the insuperable difficulty is, that Barnes had never paid for the property, whilst the petitioner's claim is against those who stand in the place of the vendor. She could not have set up this claim against Boak, and the least that can be said is, that Gay and Chamberlain stand in his place. Admitting, as before, her right to dower in an equity, then she might probably sustain a bill against the heirs or administrator, who were about to complete the decedent's contract, and she might be let into dower, upon bearing her portion of the burden. But she cannot sustain the claim against the vendor, or those occupying his position, in a contract not performed.

That she would be entitled to dower in an equitable interest, is clear, under the Code, but the time of Barnes' death is not shown.  And the right may have existed before the Code, as a part of the court supposes to have been the case, but there is no call for a determination of this point.

The decree of the district court is affirmed.