# A. N. PARKER *v.* DAVID DEAN.

1. EXECUTION — A MOTION OF LEVY — EFFECT OF A SUPERSEDEAS BOND.— As has been the practice in this state, the execution of a supersedeas bond is an amotion of a levy on personal property, the bond being considered security for the debt, and ample indemnity to the creditor for arresting the action of the sheriff under the writ.

2. SAME — LEVY — POSSESSION NECESSARY.— On general principles, a seizure of chattels under *fieri facias* is only constructively a discharge of the debt. To make such seizure good, the sheriff must take the property into possession, and subject it to his control.

3. SAME — SAME — RIGHTS OF THE SHERIFF AFTER SEIZURE.—When the sheriff has seized chattels, and taken them into possession, having a right of possession and a qualified property as bailee of the law, he may protect and assure that possession, by actions of trespass, detinue or replevin, as the case may require.

4. SAME — HOW FAR A LEVY IS A SATISFACTION OF THE JUDGMENT.— If the sheriff has once taken into possession property, the creditor will not be permitted, by a subsequent writ, to make another seizure, until he has accounted for the first.

5. SAME — SAME.— The first seizure is deemed a payment in those circumstances where, if not so regarded, the debtor would be twice deprived of his property on the same judgment. In other cases it is no satisfaction.

6. SAME — SAME — WHERE THE SHERIFF WASTES OR MISAPPLIES THE GOODS. — If the sheriff wastes or misapplies the goods after levy, the creditor must look to him for indemnity. In such case, to the extent of the value, there has been a satisfaction of the debt.

7. SAME — UNDER WHAT CIRCUMSTANCES THE LEVY IS NOT A DISCHARGE OF THE DEBT.— If the debtor was never deprived of possession by the levy, or the property was restored by the sheriff, there is no discharge of the debt.

Statement of the case.

8. HOMESTEAD EXEMPTION — RIGHTS OF VENDEE OF THE EXEMPTIONIST.—The statute of 1867, entitled "An act to amend the exemption laws of this state," authorizes the exemptionist to sell and convey the land freed from liability to judgments against him; and the judgment creditor cannot seize and sell the land, and defeat the title of the vendee, whose title is not dependent upon a re-investment in another homestead, and who is not chargeable with the duty of seeing to the appropriation of the purchase-money.

9. SAME — RIGHT OF THE EXEMPTIONIST TO SELL A PART OF THE EXEMPTION. — A right to sell the homestead includes a right to sell a part of it.

APPEAL from the chancery court of Madison county. YOUNG, Chancellor.

On the 5th of September, 1870, the bill of complaint was filed by A. N. Parker against David Dean for an injunction, and sets forth that David Dean recovered a decree in the chancery court against R. M. Latimer, M. J. McKie and S. L. Mosby, for the sum of $497 12 and costs, on the 15th day of April, 1867; that execution issued on said decree on the 18th day of April, 1867, and that the then sheriff of Madison county, by virtue of said execution, did on the same day levy upon and take into his possession seven barrels of whisky, the property of said S. L. Mosby, and that the seven barrels of whisky so levied upon was worth the sum of $700, and amply sufficient to pay said decree. That on said 18th day of April, 1867, a petition for writ of error to the high court was filed by said Latimer, McKie and Mosby, to operate as a supersedeas, and bond given and approved according to the statute and supersedeas issued on the 25th April, 1867. That, at the December term, 1867, of the high court, said Dean's decree against Latimer, McKie and Mosby was affirmed by the high court of errors and appeals. That on the 11th day of May, 1868, upon the affirmance of said decree, a writ of *fieri facias* issued out of said chancery court against Latimer, McKie and Mosby's property, and on the same day, to wit, the said 11th day of May, 1868, was levied by the then sheriff of Madison county on a certain lot or parcel of ground situate in the county and state aforesaid as the property of said S. L. Mosby. That said writ of *fieri facias* was made returnable to the

September term, 1868, of the chancery court, and that said David Dean caused a writ of *venditioni exponas* to issue upon his said decree on the — day of August, 1870, returnable to the October term, 1870. That the sheriff has advertised said lot or parcel of ground to be sold on the 5th day of September, 1870, as the property of said S. L. Mosby, to satisfy said decree, and that the said sheriff will sell the same unless restrained by the said chancery court. That said S. L. Mosby was on the 15th day of April, 1867, and is now a free white citizen, housekeeper, householder and the head of a family, having a wife and several children, and sometime before the said 15th of April, 1867, he owned and occupied as such, as a place of residence for himself and family, a tract of land containing less than one hundred and sixty acres ; that said tract is situate in said county, and does not lie in whole or in part in any city, town or village incorporated ; that he lived on said place continuously with his wife and children from some time before the 15th day of April, 1867, to the 4th day of May, 1867. That said tract was an entire tract and was not in detached parcels ; that he had no other residence, and the number of acres much less than one hundred and sixty. That on the 4th day of May, 1867, the said S. L. Mosby for a good and valuable consideration sold and conveyed to said A. N. Parker (the complainant) the said lot or parcel of ground so levied on and described as aforesaid, and which is advertised to be sold by the sheriff under said writ of *venditioni exponas*, and on the 5th day of September, 1870, being a portion of said tract so used and occupied by the said S. L. Mosby at his residence, at the time of the sale of the same to the said Parker. That at the time of the rendition of said decree in favor of Dean, and at the time of the sale as aforesaid to said Parker, said S. L. Mosby lived on said place with his family as his homestead. That the land so purchased by complainant was a small portion of the said entire tract, so owned and used by the said Mosby as his place of residence and as his homestead. The complainant prayed and

obtained an injunction. Defendant Dean demurred to the bill. The demurrer was sustained and the bill dismissed and an appeal prosecuted by complainant.

*W. J. George*, for appellant.

The bill presents two grounds of relief: 1st. That previous to the sale of the real estate in controversy to appellant by Mosby, a levy was made upon personal property sufficient to satisfy the debt of appellee; 2d. That said real estate, at the time of said sale to appellant, was owned and occupied by said Mosby as a homestead, and was, therefore, exempt from levy and sale under execution.

As to the first ground, it is insisted by adverse counsel that the satisfaction is only *prima facie*, and that the bill is defective in not showing what went with the personal property, and in not averring that the same was actually lost to Mosby, or was not returned to him or remained with him, at his request, after the writ of error was taken, or that it was misapplied, wasted or lost by the sheriff.

These objections are purely matters of defense, which may be set up against the averments of the bill, and the rules of pleading do not require them to be anticipated. It is only necessary that a *prima facie* case should be stated.

As between the plaintiff in execution and a third person, a levy upon personal property, sufficient to satisfy the debt, is absolutely a satisfaction in so far as he is concerned.

It will be borne in mind that the sale of the real estate by Mosby to appellant was made after the levy upon personal property. Duncan v. Harris, 17 S. & R. 438.

What is the effect of a supersedeas after levy made? Does it or not operate as a removal of the levy? We say not. At common law a supersedeas must come before a levy, otherwise the sheriff must proceed to sell. Boyle v. Zackarie, 6 Pet. 642. The levy places the property in the custody of the law, so that it cannot even be reached by the process of another court. 10 Pet. 400. By the levy, the debtor is deprived of his property, which, in law,

is the essential thing operating to satisfy the execution; the sale of it is a mere incident, and an execution being entire in its nature, and, once begun, cannot be superseded, but must go on to completion. Beaty v. Chapline, 2 Harr. & Johns. 15; 7 Bac. Abr. title Supersedeas, G; Watts on Sheriffs, 200; 1 W. Black. 57; 1 Cow. 15; 7 ib. 417; ib. 418.

The law then presumes the personal property, in this case, levied upon, or the proceeds thereof, to be now in the hands of the sheriff; and so long as said levy remains undisposed of it is a satisfaction of appellee's judgment, and a second execution cannot issue. McGhee v. Hanly, 5 How. 629; 7 ib. 393. Appellee's remedy was to have issued a *venditioni exponas* in order to ascertain where the property was.

As to the second ground of relief, we assert that the real estate in controversy never was subject to the lien of appellee's judgment. The property, when sold — which sale took place on the 4th day of May, 1867 — was a part of the homestead of Mosby, and the transaction is governed by the exemption laws in force at that date. But it is objected by opposing counsel that, although the bill avers that said Mosby sold a portion of his exempt lands to appellant, it does not aver that he paid any of his creditors with the proceeds of the sale, or re-invested it in any other lands or personal property for a homestead. Thus advancing the doctrine, that, in order to protect the purchaser of exempt property, the proceeds of the sale must be applied to the payment of the vendor's debts, or re-invested in other exempt property for a homestead.

In answering this we premise by suggesting, that this is not embraced in that class of cases, which are well defined, where the purchaser is required to see to the application of the proceeds of sale. Elliott v. Merryman, 1 Lead. Cas. Eq. 97. But we apprehend that a fair construction of the act amendatory of the exemption laws of this state, approved February 16, 1867, will not warrant the doctrine contended for by adverse counsel, we quote the first section of said act — Acts of 1867, page 221:

"SEC. 1. *Be it enacted by the legislature of the state of Mississippi:* That the exemption laws of this state be and the same are so hereby amended, that the head of every family shall have full power and authority to sell and convey the land and personal property that is by law exempt from sale under execution, attachment or garnishment, and to re-invest the proceeds of the sale in other lands for a. homestead, and that the land and personal property so sold shall be exempt from execution, attachment or garnishment for the debts of the vendor, and the proceeds of the sale shall be exempt from execution, attachment or garnishment: *Provided,* they are invested in other land or personal property for a homestead, within one year from the reception of the purchase-money: *Provided,* that only so much of the land and personal property into which such proceeds may be invested shall be exempt from execution as is exempted by law."

How stood the law previous to the passage of this act? This court, in Whitworth v. Lyon, decided in effect that, so long as the head of a family owned and occupied a homestead, it was exempt from execution, but the moment he ceased to be the owner and the title passed from him, his judgment creditor could subject it to the payment of his debt in the hands of the vendee. What was the effect of this law? It was simply to root him to the soil; he could not sell his homestead and purchase another more suitable, or make an exchange with some other person, however advantageous this might be. This law was felt to be a hardship, and the present act was simply, and we think wisely, passed as a relief against the harshness of the law as it then stood.

The construction of the act as contended for by appellee's counsel would certainly defeat this object. No prudent man would risk his means in the purchase of property when his title to it depended upon the contingency of his vendor's applying the proceeds to the payment of his debts or to the purchase of other exempt property.

Again, we think such a construction is a violation of the propriety of language. The first proviso is intended to qualify the clause immediately preceding it, to wit: "And the proceeds of the sale shall be exempt from execution, etc. Provided, they (the proceeds) are re-invested," etc. It does not qualfy the clause immediately preceding said last-mentioned clause, to wit, "that the lands, etc., so sold, shall be exempt," etc. To do so is to give the word "invest" a meaning which good usage does not warrant. To invest implies the use of money or something of the nature of money.

*J. A. P. Campbell,* on the same side.

The main question in this case, and which must be decisive of it, is whether since the date of "An act to amend the exemption laws of this state," approved Feb. 16, 1867, the land exempted by law from execution, as a homestead, when sold, is liable, in the hands of the purchaser, to execution against his vendor, because the vendor does not, within one year, invest the proceeds in other land for a homestead. Is the right of the purchaser of exempt property to continued protection in the subject of his purchase dependent on the investment by his vendor of the purchase-money paid him within one year in other exempt property ? The decree of the chancellor was an affirmative response to this question and was clearly wrong. The manifest object and effect of the act before recited by its title, and which may be found on page 221, Pamphlet Acts 1867, were threefold. 1st. To meet and obviate the effect of the decision of Whitworth v. Lyon, 39 Miss. 467, by conferring on every head of a family full power and authority to sell and convey his exempt property ; 2d. To protect the purchaser in his purchase free from liability to the debts of his vendor, and thus to render available the right of the debtor to sell his exemption (for without security to the purchaser the right to sell would be practically useless) ; and 3d. To protect the proceeds of such sale for one year, a time deemed long enough

to buy other exempt property, failing in which the protection of the exemption law is to be withdrawn, not from the property sold and paid for, no longer the property of the debtor, but of another, but from the proceeds belonging to the debtor. The language of the statute is, "And the proceeds of the sale shall be exempt from execution attachment or garnishment. Provided, they (manifestly the proceeds) are invested in other land," etc. It is from the "proceeds" the protection of the exemption is to be withdrawn after one year. It is never to be withdrawn from the right of the purchaser who bought from him, who at the time of sale had the legal right to sell, and whose subsequent dealings with the purchase-money cannot in any manner affect the rights of his vendee, who is not responsible for the application of the purchase-money by his vendor. I forbear to discuss the other questions involved, as the foregoing must be decisive of the case, both here and when remanded.

*Franklin Smith*, for appellee.

The second cause of demurrer presents the point, that the levy being made on the 18th day of April, 1867, on the seven barrels of whisky, and the petition for writ of error, and writ of error bond being filed same day, by Latimer, McKie and Mosby, shows that the sale of the whisky was prevented by the act of Latimer, McKie and Mosby, and that it was impossible for the sheriff to sell it.

The bill shows that the writ of supersedeas issued on the 25th day of April, 1867, and was served on the attorney of record for Dean, on the 26th of April, 1867. Now, by the law, Code of 1857, p. 528, art. 277, the sheriff, before he can sell personal property levied on under an execution in his hands, must give ten days' notice of the day of sale.

All the other causes of demurrer, except the sixth, may be ranged under the first cause of demurrer, to wit: "That said bill contains no matter of equity whereon this court can ground a decree, or give said complainant any relief, as against this defendant."

If a prior levy is relied on, showing a levy and seizure by the sheriff falls short, the bill must go further to satisfy the conscience of the chancellor to suspend the due course of law; it must show affirmatively, as a matter of equity, that a wrong would be perpetrated unless he interposed, by averring that the property levied on was " actually" "taken out of the possession of the defendant;" that it was sold by the sheriff, or "actually lost" to the defendant, by the misconduct of the plaintiff in execution, or the sheriff as his agent." According to well-considered authorities, in no other way can a levy be interposed in equity, or at law, as "a satisfaction," or "discharge of a debt." Alexander v. Polk, 39 Miss. 752; Wade et al. v. Watt, Noble & Mobley, 41 ib. 248, 255; Evans v. Fisher, 40 ib. 676.

In the sixth cause of demurrer, formerly the law required the debtor to devote the whole of his property, with some trivial exceptions, fairly to the payment of his debts, and would not tolerate any subterfuge or device which was intended to divert it from that purpose. Trimble v. Turner, 13 Smedes & Marsh. 348, 362; Stanton et al. v. Green et al., 34 Miss. 577, 585, 591.

Nor could any "feeling of sympathy," nor any "considerations on account of hardship" or of "family," nor "any pretexts and shifts" save "from the condemnation of the law." Trimble v. Turner et al., 13 Smedes & Marsh. 348, 362; Burke v. Murphy et al., 27 Miss. 168, 187; Stanton et al. v. Green et al., 34 Miss. 591.

The legislature, in 1857, Code, 529, listening to the voice of humanity, to encourage marriage and to secure to helpless women and children a "home and the means of support." Trotter v. Dobbs et ux., 38 Miss. 199; Whitworth v. Lyon, 39 Miss. 468, 469, gave to debtors having families one hundred and sixty acres of land, so long as the debtor "owned and occupied the land and buildings as a residence," and at his death gave it to his family as a homestead, so long as one of them continued to occupy it, until the youngest child arrived at age and until the death of the

widow. The condition annexed to the grant was residence and continued occupancy. The legislature of 1865 (ch. 9, p. 137, 138) converted "humanity" into "injustice" by securing to the once wealthy families of the state "a fortune," despite the ravages of war, and to "the majesty of buried Denmark" the privilege of being "in complete steel" against their betrayed and suffering creditors !

The legislature of 1867 (Laws of 1867, ch. 177, p. 221) followed up this "so-called humanity" by breaking the force (to a certain extent) of the rule of Whitworth v. Lyons, by allowing the fortunate unfortunate to sell his exempt property as a whole, on condition of his re-investing the proceeds of the sale in other property, real and personal, for a homestead. The legislature of 1870 (Laws of 1870, ch. 25, p. 98, 99) has stripped meretricious "humanity" of her false garb and given her "modest attire" by supplying the family of an unprincipled head with a sufficiency of property, real and personal, to furnish a home and the necessaries of life. And though reiterating the privilege to the debtor having a family to sell property exempted, yet, pays the tribute to justice, by declaring that the judgment creditor's lien, obtained before the sale, shall continue to attach to the property sold, "so long as the judgment shall remain unsatisfied and in force." Laws of 1870, § 3, p. 99.

This is a case in equity and the doctrine of the application of purchase-money bears upon it. "One of the rules laid down in the principal case, and which is invariably followed, is, that if the trust directs lands to be sold for the payment of certain debts, mentioned in particular to whom the debts are owing, the purchaser is bound to see that the money is applied for the payment of those debts." 1 Lead. Cas. in Eq. (Hare & Wall.'s Notes), top p. 102, last of marginal p. 51.

Parker knew from the records of the courts that there were certain judgments binding on the property which he purchased, and that the proceeds of the sale, according to Whitworth v. Lyons and the policy of the exemption laws,

had to go as a duty, on the part of Mosby, either toward the payment of those judgments, or to be re-invested in other homestead property for the maintenance of his wife and children; to raise an equity in his favor he ought to have averred that he saw to the performance of that duty, or that he was misled by the promises and avowed intentions of Mosby in reference thereto. The American doctrine is not so strong, perhaps, but it is comprehensive enough to cover this case. 1st and 2d columns of Hare & Wall.'s Notes to 1 Lead. Cas. in Eq. top p. 123–125, 126; 8 Wheat. 422–442; 1 Lead. Cas. in Eq. 130, 131. And Wormly v. Wormly, 8 Wheat. 422–442, establishes the principle, that if a trustee in a marriage settlement under a power to sell and re-invest, sells under circumstances that constitute a breach of trust, namely: not for the purpose of re-investment, but for the purpose of paying his own debts, and the purchaser has notice of this, the land in his hands is affected with the trusts which previously attached to it. 1 Lead. Cas. in Eq. (Am. notes), top p. 130, 131.

*Geo. L. Potter,* on same side.

1. The statement as to the levy on the whisky shows no ground for an injunction, and does not seem to be relied on by complainant. After that levy, a writ of error, with supersedeas, was sued out, and the decree was affirmed. On such supersedeas the levy becomes inoperative, and the property is restored to the defendant.

The pleader did not attempt to state a case proper for an injunction based on that levy. He did not attempt to show that the sheriff still had the whisky, or that any facts existed to preclude Dean from enforcing his execution against the property of Mosby.

2. The evident purpose of the bill was to prevent a sale of the land, because of supposed rights under the homestead laws; but the bill fails to show a proper case.

What are the facts? Mosby, entitled to an exemption, owned and occupied a tract of land (less than 160 acres), as

his family residence. On the 15th April, 1867, appellee, Dean, obtained a decree against him and others. On the 4th May, 1867, Mosby, for a good and valuable consideration, sold and conveyed part of his homestead tract to complainant; but, as the bill leaves us to infer, still retains the balance as his homestead. On the 11th May, 1868, execution on the decree was levied on that part of the land thus conveyed to appellant, and this bill was filed September 5, 1870.

SIMRALL, J.:

Two questions are made in the record : 1st, was the levy on the seven barrels of whisky, being sufficient in value to pay the decree, a satisfaction of the same ?

The bill states that, on the same day that the levy was made, Mosby, the debtor and owner of the whisky, executed a supersedeas bond, and sued out a writ of error. The effect of that was to stay absolutely the sheriff from further proceeding under the execution. As has been the practice in this state, the execution of such a bond is an amotion of a levy on personal property, the bond being considered security for the debt, and ample indemnity to the creditor for arresting the action of the sheriff under the writ.

On general principles, a seizure of chattels under *fieri facias* is only constructively a discharge of the debt. To make such seizure good, the sheriff must take the property into possession, subject to his control; therefore, having a right to the possession, and a qualified property as bailee of the law, he may protect and assure that possession by action of trespass against a *tort feasor*, or bring detinue or replevin against him who tortiously deprives him of possession. These remedies are afforded him in order that he may obey the precept of the law, by converting the property into money for the creditor. What the law aims at is, to realize the money for the creditor. A levy is constructive payment, to prevent injustice and wrong. If the sheriff has once

taken into possession property, the creditor will not be permitted by a subsequent writ to make another seizure until he has accounted for the first. The first seizure is deemed a payment, in those circumstances, when, if not so regarded, the debtor would be twice deprived of his property on the same judgment. In other cases it is no satisfaction. Banks v. Evans, 10 Smedes & Marsh. 57; Wade v. Watt, Noble & Mobley, 41 Miss. 254. If the sheriff wastes or misapplies the goods after levy, the creditor must look to him for indemnity; in such case, to the extent of their value, there has been a satisfaction of the debt. If the debtor was never deprived of possession by the levy, or the property was restored by the sheriff, there is no discharge of the debt.

We are of opinion that the statements of the bill sufficiently explain that the seven barrels of whisky were not lost to Mosby, and overcome the inference from the fact of levy that there has been a constructive discharge of the decree.

The second and most important question is, whether the land sold and conveyed by Mosby to Parker is subject to the lien of the decree against the former.

Whitworth v. Lyon, 39 Miss. 467, placed a construction upon the homestead exemption as defined in art. 281, Code, 529. It was held that exemption depended upon the condition of occupancy, and if that ceases by the act of the debtor, as by an alienation, the land becomes at once liable to seizure and sale under a judgment against the exemptionist. Stress was laid upon that feature which continued the exemption after the death of the debtor, "for the benefit of the widow and family of the deceased, until the youngest child shall become twenty-one years of age." The estate was upon condition subsequent, and was preserved so long as the condition was kept; but if broken, as it would be by sale and conveyance, then it lost its peculiar privilege, and was open to the judgment creditor.

It is very doubtful whether the exemption laws in force at the date of the sale by Mosby to Parker are susceptible

of the same construction.   Material changes have been
made in the law since the revision of the statutes in 1857,
which tend to free the estate from the stringent conditions
imposed by the earlier statutes.

The first section of the act of 1865 declares "that the
following described property, real and personal, shall be
exempt from seizure and sale under execution and attach-
ment, to wit," etc.   After enumerating a schedule of chattels,
follows, without use of a period, "also, to the head of a
family and a householder, two hundred and forty acres of
land, including the dwelling-house," etc.   It will be observed
that this language is very different from that employed in
art. 281 of the Code   The same words are used to describe the
exemption of the homestead as are employed in reference
to personal property.   The continued exemption for the
benefit of the family, after the death of the debtor, until the
youngest child attains twenty-one, is pretermitted, and, in
lieu of it, the third section makes the exempt property
descend directly to the widow and children, so that, upon
the death of the debtor, his family take by inheritance, and
do not hold the real estate as a homestead upon the terms
of occupancy, but hold absolutely, and freed from all con-
ditions.   It would do no violence to the language to inter-
pret the terms "head of a family" and "householder" as
descriptive of the person entitled to the exemption, and
the words "land, including the residence and other build-
ings," as descriptive of the real estate, to which alone the
privilege applies; for it is the land on which the debtor
resides, and none other, that may be exempted.   No other
person except the head of a family and householder can
claim the benefit of the statute.   May not these terms in
the law of 1865 be fully satisfied by giving this import to
them, rather than as forming elements in the description of
the estate which the exemptionist has?   This view of the
matter is borne out by the consideration of the third section
in connection with the first.

Further legislation was had in 1867, in the line of still

further assuring the estate in the exemptionist, and enlarging his control over it, as the exigencies of himself and family might suggest. Under the law, as in the Code of 1857, the courts had made the estate inalienable, in effect, unless the debtor chose to surrender it to his creditor. If he sold it, his purchaser could not hold against a prior judgment creditor. This was a great hardship. It was a legal compulsion to occupy the same residence, no matter how the fortunes of the debtor and his family might be improved by removing elsewhere. For remedy "full authority and power was conferred to sell and convey," and invest the proceeds in another homestead, and the "land so sold shall be exempt from execution and attachment for the debts of the vendor." The proceeds are invested with immunity for a year, giving to the exemptionist that time within which to make a re-investment. It can hardly be supposed that the law-makers meant, by the words "full authority and power to sell and convey," to embarrass the title of the purchaser with uncertainty, to make it conditional for a year, subject to be defeated if the re-investment were not made. Such a construction would cripple and circumscribe, and might altogether defeat that clause, "which exempts the property, for the benefit of the vendee." To hold that the purchaser must see to a re-investment of the money, and, if misapplied, must lose his land by a prior judgment, would be in conflict with the object and spirit of the law. The intent was to enable the insolvent debtor to sell and convey a free and unembarrassed title, in no wise affected and incumbered by judgment liens; and to refer the creditors after the expiration of a year to the proceeds of sale, if in the mean time they were not invested in another homestead. If this immunity had not been thrown around them, creditors might, immediately upon the sale, have proceeded against them.

We held in Thoms v. Thoms et al., decided at this term,* that the wife and children had no vested interest in the

*Supra*, p. 263.

homestead during the life-time of the husband, he being the insolvent debtor, and that he could by sale break up the homestead, vesting our judgment on the third section of the statute of 1865, and other antecedent laws.

In Smith v. Allen, 39 Miss. 473, the court decided that a purchaser or donee of the exempt personal property acquired a good title unaffected by the lien of a judgment. The distinction was made between the terms used in the Code in exempting chattels and the homestead ; as we have already remarked, there is no difference made in the statute of 1865. It may be observed that the later decisions in other states incline to the doctrine that the alienor of the exemptionist acquires a good title. Lamb v. Shery, 14 Iowa, 569, decided in 1863. The Iowa statute, like ours, makes a judgment a lien on all the real estate of the debtor, but, after reviewing the conflicting decisions, concludes that the exemption statute excepts and withdraws the homestead from the general law.

We are of opinion that the statute of 1867 authorizes the exemptionist to sell and convey the land freed from liability to judgment against him ; that the judgment creditor cannot seize and sell the land and defeat the title of the vendee; and further, that his title is not dependent upon a re-investment in another homestead, nor is he chargeable with the duty of seeing to the appropriation of the purchase-money. A right to sell the homestead includes a right to sell a part of it ; for *non constat*, but an adjacent parcel of land may be purchased and annexed to the homestead.

The decree of the chancellor is reversed.