B. F. HOWELL AND WIFE *v.* A. H. BUSH ET AL.

1. HOMESTEAD EXEMPTION. *Not alienable without wife's consent. Allotment in chancery.*

Under the act of April 18, 1873 (Acts 1873, p. 79), a deed of trust by a husband on the family residence, his wife not joining, is void as to the homestead exemption of $2,000, but binding on the excess; and

the Chancery Court, on a bill to enforce the trust, should appoint a commissioner and allot the homestead in analogy to §§ 2136, 2137, Code 1871, as far as conformable to chancery procedure.

2. MORTGAGE. *Extinguishment. Change in form of indebtedness.*
   A mere change in the form of indebtedness will not discharge a lien, unless the parties clearly intended to extinguish it; but equity will consider it alive or not, as accords best with justice and the parties' actual intention.

3. SAME. *Case in judgment.*
   H., through F., having bought from B. a hotel, B. conveyed to F., who gave B. a trust-deed thereon to secure part of the purchase-money; and F. conveyed to H., who gave F. a trust-deed thereon to secure the same balance. To secure P., who, at H.'s request, paid B. said balance, H. gave a trust-deed on the property, and the former ones were cancelled. *Held*, that the purchase-money was paid, and the trust-deeds to secure the same extinguished, and that H.'s wife not having joined in the trust-deed to P., it was subordinate to the homestead exemption in the hotel, the family residence, notwithstanding the provision of § 2142 Code 1871, that no property shall be exempt from execution on a judgment for the purchase-money.

APPEAL from the Chancery Court of Noxubee County.

Hon. L. BRAME, Chancellor.

Mrs. Bevill owned four-fifths, and Eiland one-fifth, of an urban hotel, which B. F. Howell desired to purchase; but they declining to sell to him, he induced one Franks to buy for him. Franks obtained the hotel for $11,000, of which he paid $5,000 cash, and for the remainder gave his two notes, due Jan. 1, 1874, one to Mrs. Bevill, for $4,800, and the other for $1,200, to Eiland. On Jan. 3, 1873, they conveyed the property to Franks, who, on the same day, conveyed to a trustee, to secure the two notes. Six days afterwards Franks conveyed to Howell, for the consideration of $5,000 cash and his note, due Jan. 1, 1874, for the $6,000 balance, to secure which Howell gave a trust-deed on the property. Howell and his wife then took possession of the hotel, where they have resided ever since. When Franks's note fell due, Mrs. Bevill refusing to wait, and he declining to pay, the burden fell on Howell, who, being unable to meet the note, applied to A. H. Bush, of the firm of Bush, Patty & Co., offering, if they would pay Mrs. Bevill, to give them a deed of trust on the real

estate, securing not only the amount advanced to pay her, but also other debts which he owed them. The proposition being accepted, Howell, on Feb. 1, 1874, gave them his note for $5,854; and, to secure it, on the same day executed to Redwood, as trustee, upon the hotel a deed in which Mrs. Howell did not join. Next day Bush, Patty & Co. paid Mrs. Bevill, took up Franks's note to her, and had the two prior trust-deeds marked satisfied. When Redwood, on Howell's default, advertised the property, the sale was enjoined by this bill, on the ground of the wife's failure to join in the deed of trust, which attempted to convey their homestead. Bush, Patty & Co., in their answer and cross-bill, claimed that the exemption could not be held against money borrowed to pay for it, but that they were entitled to the benefit of Mrs. Bevill's security. From a decree subjecting the entire property, Howell and wife appealed.

*J. T. Harrison*, for the appellants.

*E. Dismukes* and *Beverly Matthews*, on the same side.

No counsel for the appellees.

CAMPBELL, J., delivered the opinion of the court.

The Chancellor, having determined that Mr. Howell is entitled to homestead exemption, erred in subordinating his claim in this respect to the deed of trust executed by Howell in February, 1874, without the joinder of his wife. There can be no question of the right of the holders of the deed of trust to subject the property as to its value in excess of $2,000, the *maximum* of a homestead exemption. That was settled in *Bank of Louisiana* v. *Lyons*, 52 Miss. 181. But upon the facts of this case as disclosed by the record, the appellees did not acquire the rights of the holder of the deed of trust executed by Howell for the purchase-money of the land. Bush, Patty & Co. paid the money which extinguished the claim against Howell for the balance of purchase-money; but the deeds of trust which secured that were cancelled, and there was no agreement or understanding between the parties that Bush, Patty & Co. should stand in the place of the seller of the land. On the contrary, a new deed of trust was executed by Howell to secure Bush, Patty & Co. the performance of the

contract he had made with them, and the original deeds of trust were entered satisfied and cancelled.

Bush, Patty & Co., as assignees of the note for purchase-money secured by deed of trust, would have had a claim on the property paramount to the claim of homestead exemption. But they do not occupy that position. They are independent creditors, strangers to the original transaction, who took *a new security*, and did not rely on the former, but had it extinguished. They cannot now shift their position, but must stand on their chosen security. Being executed by the husband alone, it is void as to the homestead, *i. e.* $2,000, but is valid as to the excess; and the Chancery Court, in dealing with it, should proceed in analogy to §§ 2136, 2137, of the Code, as far as may be conformable to the course of procedure in chancery. The value should be ascertained by a commissioner, and sixty days allowed Howell in which to pay the excess; failing in which, sale should be made, and $2,000 paid to Howell, and the remainder, as far as necessary, applied to the claim of Bush, Patty & Co.

*Decree reversed and cause remanded.*

Thereupon, on motion by *H. L. Jarnagin, Sen., Thomas Christian* and *H. W. Foote,* for the appellees, and a showing that the case was prematurely submitted, on a call of the docket not peremptory in their absence, occasioned by erroneous information, and decided without their briefs being filed, the judgment was recalled, and the case remanded to the docket for argument.

*E. Dismukes* and *Beverly Matthews,* for the appellants.

1. The policy of homestead laws is discussed in *Mosely* v. *Anderson,* 40 Miss. 49; *Thoms* v. *Thoms,* 45 Miss. 263, 274; *Campbell* v. *Adair,* 45 Miss. 170; *Parker* v. *Dean,* 45 Miss. 408. It has been characterized by the courts of other States as beneficent, 4 Cal. 23, 26; as liberal, wise and benevolent, 1 Iowa, 441, 512; 41 Miss. 127; and as humane in its character, 28 Vt. 674. The leading object is to protect and preserve a home, not for the husband alone, but for him and his wife and children, 1 Iowa, 512; 6 Iowa, 30; a place where they may live in society beyond the reach of

financial misfortunes and the demands of creditors, 11 Iowa, 106; 7 Mich. 506; 15 N. Y. 492. The beneficent provisions are especially designed to guard the wife and children against the neglect, the misfortunes, and improvidence of the father and husband. 4 Cal. 23, 26; 15 Texas, 176; 7 Texas, 13, 20; 30 Vt. 759. The children equally with the wife are within its benefits. 12 Cal. 327; 6 Iowa, 30; 34 N. H. 392; 21 Ill. 178; 23 Ill. 536; 33 Miss. 464. The design is to protect citizens and families not simply from destitution, but to foster those feelings of independence so essential to the maintenance of free institutions. 18 Texas, 413. Colonel Benton believed that tenantry was unfavorable to freedom, and tended to establish separate orders in society, and that the freeholder was the natural supporter of free government. Thirty Years' View, vol. i. 103, 104. Macaulay has drawn a fine picture of a youth, with sunburnt brow, stepping from his dwelling, which is his castle, upon the soil, which is his freehold.

2. Of what does the homestead consist? It is the dwelling-place of the family, where they permanently reside. 4 Cal. 26. It includes the entire lot upon which the debtor resides, whatever else may be there, and for whatever else it is used. 58 Ill. 425; 4 U. S. Dig. N. s. 342, § 12. A house is exempt, though a portion be used and constructed to be used as a brewery, *In re Tertelling*, 2 Dillon C. C. 339; 4 U. S. Dig. N. s. 342, § 13; or a store, 1 Mich. N. P. 210; 30 Texas, 440; or a country hotel, 8 Allen (Mass.), 575.

3. How is it alienated? Only in conformity with the act of 1873, p. 78. Under constitutions and statutes which provide for the exemption of the homestead from forced sale by legal process, and that it shall not be alienated without the joint consent of husband and wife, a sale or mortgage by the husband alone is void. 5 Kansas, 239; 2 U. S. Dig. N. s. 341, § 21; 37 Texas, 625; 5 U. S. Dig. N. s. 399, § 49; *Williams* v. *Starr*, 5 Wis. 534; 9 Iowa, 509; *Richards* v. *Chace*, 2 Gray, 383. The homestead right of the family is peculiarly favored by the courts, and to make an operative conveyance the mode pointed out by the statute must be strictly pursued. 6 Cal. 73; 23 Ill. 536; 58 Ill. 425; 2 Dillon C. C. 290. The stat-

ute of 1873 prescribes the mode of alienation, and if that be
not pursued the instrument is not valid as to any one. A court
of equity can administer no relief. 1 Story Eq. Jur. § 177.

4. Will the court subrogate Bush, Patty & Co. to the rights
of Mrs. Bevill? If the relation of vendor had remained, it
was a personal right, and incapable of assignment. 25 Miss.
88; 44 Miss. 247. The acceptance of a deed of trust direct
from Howell to Bush, Patty & Co. is fatal to the claim of sub-
rogation. *Myers* v. *Estell*, 48 Miss. 372.

*Thomas Christian*, *H. L. Jarnagin, Sen.*, and *Foote & Foote*,
for the appellees.

1. That the homestead law is beneficent in its character
is not denied. But while the law is kind to the unfortu-
nate, it is also just. It gives every head of a family a home-
stead, where it is paid for; but not otherwise. Code 1871,
§ 2142. No property is exempt from execution where the
purchase-money forms, in whole or in part, the debt on which
the judgment is founded. Equity follows the law. *Wilie* v.
*Brooks*, 45 Miss. 542, 551. The statute is a guide to a Court
of Chancery. Nor is any distinction made, in our State or
sister States, between money due the vendor and money due
a third person who has advanced it to pay the vendor.

2. Our law requiring the wife's signature to a conveyance
of the homestead is copied from the statutes of other States, by
whose courts they have been repeatedly construed. Where we
have a statute copied from that of another State, we will adopt
the construction given to it by the court of the State from
which it was derived. Kansas, California, Texas, Iowa and
Illinois are some of those States. In California, where one
purchased a homestead, taking a deed in fee, but borrowed
from a money-lender the means to pay the purchase price,
giving a mortgage on the land to secure the same, without the
signature of his wife, the land was held bound, although the
same argument was urged to defeat the mortgagee which is
made in this case. *Lassen* v. *Vance*, 8 Cal. 271. In *Barnes* v.
*Gay*, 7 Iowa, 26, the court said: " The insuperable difficulty is
that Barnes had never paid for the land, while the petitioner's
claim [for homestead] is against those who stand in the *place* of
the vendor." In Illinois, money may be borrowed to pay the

purchase price of a homestead, and secured by a mortgage on the property in which the wife does not join, notwithstanding the statute. *Austin* v. *Underwood*, 37 Ill. 438. And generally, where the mortgage is given for money borrowed to pay the vendor, the homestead exemption cannot be set up against it. *Christy* v. *Dyer*, 14 Iowa, 438 ; *Curtis* v. *Root*, 20 Ill. 53 ; *Farmer* v. *Simpson*, 6 Texas, 310 ; *Skinner* v. *Beatty*, 16 Cal. 156 ; 2 Allen, 390 ; *Dillon* v. *Byrne*, 5 Cal. 455 ; *Swift* v. *Kraemer*, 13 Cal. 530 ; *McGee* v. *McGee*, 51 Ill. 500 ; *Allen* v. *Hawley*, 66 Ill. 68 ; 5 Nev. 233 ; *Nichols* v. *Overacker*, 16 Kansas, 58 ; *White* v. *Shepperd*, 16 Texas, 163, 172 ; *Tucker* v. *Drake*, 11 Allen, 145.

3. Two of the decisions cited are parallel with the case at bar, and, based upon natural justice, equity and law, are conclusive of this controversy. The first is *Swift* v. *Kraemer*, 13 Cal. 526. Revalk, an unmarried man, mortgaged a piece of his property, and then married. Afterwards, he borrowed money from a third party, and with it paid off and satisfied the old mortgage. To secure this money he gave the third party a new note, secured by a new mortgage on the property, but in the new mortgage his wife did not join. On his attempt to defeat the claim because the new security was inoperative, the court held that, in equity, the transaction was an assignment of the first, not the creation of a new incumbrance. The other case is *Carr* v. *Caldwell*, 10 Cal. 380. Vermule having bought the property occupied as a homestead, partly on a credit, and given a deed in trust to secure the purchase-money, it was advertised for sale. On the sale day he borrowed money from Carr, applied part of it to pay off the trust-deed, and a few minutes afterwards executed to Carr, as security, a mortgage on the same property, without his wife joining. Vermule died. His widow claimed the homestead ; and Carr filed his bill to foreclose the mortgage. Judge Baldwin says : " Can it make any difference in equity whether the first debt be renewed, or another debt — if it *be another* — for the same sum created, to raise money to pay off the first ? A clear title to the homestead could not vest until the payment of the purchase-money."

4. In the case at bar, the execution of the deed and the

making of the deed of trust to secure the purchase-money were simultaneous, and in equity would be considered as one act. A conveyance in fee, and at the same time a mortgage of the land by the vendee back to the grantor or to a third party, to secure the purchase-money in whole or in part, will not vest the title in the vendee. 4 Kent Com. 39; *Maybury* v. *Brien*, 15 Pet. 21; 1 Sandf. Ch. 76; 4 Leigh, 30; *Stowe* v. *Tifft*, 15 Johns. 458; 4 Mass. 30; 6 Texas, 303; 14 Mass. 352. Equity will overlook the form to get at the substance, *the very right and justice of the case.* In some cases it will consider that done which ought to be done, and in others that to be in existence which at law would be considered as dead. An incumbrance will be adjudged to be alive or extinguished as best subserves the purposes of justice and the actual intentions of the parties. 1 Barb. 396, 397; 1 Green Ch. 336; *Bernheisel* v. *Firman*, 22 Wall. 170; *Hudson* v. *Loomis*, 18 Iowa, 416; *Rice* v. *Wheeling*, 5 Wend. 597; 2 Gratt. 389; *Miller* v. *Wack*, Sax. Ch. 204.

CAMPBELL, J., delivered the opinion of the court.

This case was submitted on a former day, without brief or argument for the appellees, and an opinion was delivered and decree reversed. Upon application by counsel for the appellees, and a sufficient showing, the judgment was recalled and the case reinstated upon the docket for argument, and it was afterwards submitted upon briefs of counsel on both sides; and we have re-examined the case, with the aid of a very elaborate argument, containing numerous references, by counsel for the appellees. The case was considered before with direct reference to the precise question so earnestly argued by counsel for the appellees. The general principle contended for by counsel was assumed as incontrovertible, and so well settled and understood as to relieve us from either stating it or citing authorities. That principle is, that, as a general rule, a mere change in the form of the evidence of indebtedness will not operate to discharge a lien given to secure a debt, unless it is apparent that the parties intended to extinguish the lien. Whenever it is clear that the creditor still intended to retain it, his right is not affected by a mere change of the instrument,

which is the evidence of the debt, as the debt itself is the thing for which the lien was given; and a court of equity will keep an incumbrance alive or consider it extinguished as will best serve the purposes of justice and the actual and just intention of the parties. This has long been settled law, and has been repeatedly announced in this State; but the facts in this case do not indicate any thing like a design to keep the first incumbrance alive. On the contrary, the parties do not seem to have looked to that as constituting an available lien to the appellees. The facts negative any such intention, and show clearly that the appellees did not *look to securing the rights of assignees of the note for purchase-money, but to a new security.* The legal title to the lot was in Howell. It was subject to a deed of trust for balance of purchase-money. A new deed of trust was given by Howell to strangers to the former transaction, and the old one extinguished. There was no intention to keep it alive. It was not relied on, and, therefore, was cancelled. It was not done by fraud or mistake, but honestly and intentionally, for the purpose of getting it out of the way. True, it was done ignorantly as to the law requiring the joinder of the wife to make the new deed of trust valid as against the homestead right; but that does not alter the fact that the parties *did not intend to keep the former deed of trust alive,* but to cancel it, and rely exclusively on the new one taken. Where parties capable of contracting make their own arrangements, and there is neither fraud nor mistake of fact, equity will not interpose to thwart their designs or change their agreements. It will not make contracts for parties. We are not disposed to favor " homestead rights ". at the expense of law or justice, but are satisfied with the conclusion announced before.

*Decree accordingly.*

A petition for reargument was then filed by *W. L. Nugent,* for the appellees, in which he made an elaborate argument, citing *Austin* v. *Underwood,* 37 Ill. 438 ; *Curtis* v. *Root,* 20 Ill. 518 ; 7 Iowa, 26 ; 14 Iowa, 428, 527 ; *Thompson* v. *Lee,* 8 Cal. 275 ; *Dillon* v. *Byrne,* 5 Cal. 456 ; 49 Miss. 164.

*Reargument denied.*