## UNION MORTGAGE, BANKING & TRUST CO. *v.* PETERS & TREZEVANT, TRUSTEES, ET AL.

1. SUBROGATION.   *Arises, when.   Strangers and volunteers.*

    Equitable subrogation does not arise out of contract, but is a creation of the court of equity, and is applied, in the absence of an agreement between the parties, where, otherwise, there would be a manifest failure of justice. It is never enforced for the benefit of strangers or mere volunteers, nor can it displace the real contract of the parties—as, where the security contracted for is given but its legal effect is not that intended. *Howell v. Bush,* 54 Miss., 437, distinguished.

2. SAME.   *Advances to pay prior incumbrance.   Volunteer.*

    One who, on the security of a mortgage, and at the instance of the debtor, advances money to be used in payment of a prior incumbrance on the mortgaged property, is not a volunteer or intermeddler in the debtor's affairs within the rule denying to such the benefit of subrogation.

3. SAME.   *Advances to pay prior incumbrance.   Cancellation.*

    Where money is loaned under an agreement that it is to be used in paying off a first lien on the borrower's property, and that the

lender is to have a mortgage thereon, as primary security, the borrower representing that the holder of a second mortgage had agreed that the new mortgage should have priority. and it turns out that this is untrue, if the money advanced is applied in the payment of the first incumbrance, and mortgage is taken by the lender, as agreed, he will, as against the borrower and the holder of the second mortgage, be subrogated to the lien of the prior incumbrance. which will be kept alive for his protection, although it was not expected or intended that he would be subrogated thereto, and, although, the first mortgage was canceled as agreed. *Cansler* v. *Sallis*, 54 Miss., 446, cited.

4. SUBROGATION. *Intervening lienor; when not affected. Doctrine applied.*

In such case the holder of the second mortgage, being placed in no worse position by the transaction, cannot complain of the subrogation. *Cansler* v. *Sallis*, 54 Miss., 446.

5. CHANCERY PLEADING. *Bill. Prayer. Alternative relief.* ·

Where the mortgagee who has made such advances, claiming under his own mortgage, sells thereunder and enters into possession, there is nothing inconsistent in his asserting, as against the intervening mortgage. the title thus acquired, and, failing in this, to invoke subrogation as to the lien his money discharged.

6. SAME. *Possession. Statute of limitations. Estoppel.*

In such case, the fact that the debts secured by the incumbrance to which subrogation is sought are barred by limitation, will not avail in favor of the debtor or an intervening lienor where such advances were made on the faith of the debtor's fraudulent representation that the property was unincumbered; and. since the debtor is estopped to plead the statute, his legal representative is likewise estopped. *Barnett* v. *Nichols*, 56 Miss., 622; *Kelly* v. *Wagner*. 61 *Ib.*, 299.

FROM the chancery court of the second district of Coahoma county.

HON. W. R. TRIGG, Chancellor.

This is a bill by the Union Mortgage, Banking & Trust Co., designated herein as the Union Company, against Peters and Trezevant, trustees in a deed of assignment from Thomas H. Allen & Co., seeking to enjoin the prosecution of an action of ejectment. Complainant claims title through a foreclosure sale

under a trust-deed executed by Dr. James A. Peace to secure his debt of $38,000 to complainant, this trust-deed being junior in date to that of Allen & Co.  Complainant alleges that Allen & Co. agreed that the trust-deed of complainant should have priority over theirs, and also that, by reason of the circumstances attending the taking of complainant's trust-deed, Allen & Co. are estopped to deny complainant's priority.  A great deal of testimony was taken pro and con, touching disputed questions of fact as to this, complainant seeking to show that Peace, the common debtor, had falsely and fraudulently represented to the agents of the Union Company who made the loan, that his land was incumbered by only one trust-deed, and that his main purpose in borrowing the money from complainant was to pay off this, a trust-deed of about $17,000 due to the American Freehold & Mortgage Co., Limited, which was prior to that of Allen & Co.; and that Allen & Co. knew of this purpose, and assented to the loan upon the understanding that complainant, in consideration of its advancing money to pay off this incumbrance, should have priority.  The record abounds in charges and countercharges of fraud, but the opinion renders it unnecessary to set out the case in this aspect, or to further notice the controverted questions of fact.

This court, while finding as a fact that Allen & Co. did not agree that the Union Company should have priority, holds that it is entitled, on the equitable doctrine of subrogation, to be substituted to the liens its money discharged.  This question being settled, the material facts out of which the court deduces the right of subrogation may be very briefly stated, as follows: Dr. Peace had been, for many years, a customer of Thomas H. Allen & Co., cotton factors, in Memphis, Tenn., and was largely in debt to them.  In 1883 this indebtedness amounted to some $17,000, and was secured by a trust-deed upon a part of the land in controversy.  In that year, Peace made known to Allen & Co. his desire to borrow more money on the plantation, and they consented that he might do so, upon condition that he pay

them $10,000 of the sum to be borrowed, and, also, consented to take for the balance due them a second trust-deed on the land. Accordingly, Peace applied to the Corbin Banking Co., of New York, and, through it, borrowed from the American Freehold Land Mortgage Co. (known herein as the Freehold Company), $26,000, Allen & Co. canceling their trust-deed and taking a second one for their debt. Peace, having thus obtained the money, failed in his promise to pay Allen & Co. the $10,000 on their debt, yet they seem not to have taken any action based on this violation of agreement, but, in 1885, took from Peace another trust-deed on the land embraced in that to the Freehold Company. This trust-deed to the Freehold Company matured in 1889, and, Peace desiring to borrow money to pay it off, again negotiated with the Corbin Banking Co., and, through it, procured from the Union Company, complainant herein, a loan of $38,000. The agent of the Corbin Banking Co. in negotiating with Peace, preparing the abstracts of title and attending generally to the matter of loan, was one Martin, and it is shown that he knew that Peace wished the money to pay off the Freehold Company's trust-deed, and intended to give the Union Company a first lien on the land, but there is much testimony in the record tending to show that Martin and the other agents and officers of the Corbin Banking Co., purposely concealed from the Union Company the existence of the prior incumbrances. As before stated, it is a controverted question whether Allen & Co. knew that this loan was being obtained, or, knowing it, consented that the trust-deed given to secure it should be prior. Much testimony was taken on this branch of the case. It is adverted to in the opinion of the court, and also in the dissenting opinion. It is not denied that the money borrowed from the complainant was used to pay off the debt of the Freehold Company and a certain decree binding on the land, referred to in the record as the Hopson decree, and that the money was obtained by Peace and advanced by complainant for the purpose of paying off these

liens; nor is it denied that they were, when paid, marked satisfied upon the record.

The foregoing statement of facts, with that given in the opinion, is deemed sufficient.

On final hearing, the court below dissolved the injunction and dismissed the bill of complainant and awarded damages on the injunction bond and decreed in favor of Peters & Trezevant, trustees, and Allen & Co. on their cross bill, confirming their title and awarding them possession of the land. From this decree complainant appeals.

*J. H. Watson*, for appellant.

The loan of $38,000 made by the Union Company to Peace in 1889 was made for the express purpose of discharging the prior incumbrance, and it was so applied. It is a proper case for the application of the doctrine of equitable assignment by subrogation. 3 Pom. Eq. Jur., § 1211. There is no authority for the position that the right of subrogation depends on privity of contract with the intervening mortgagee. It is extended by analogy to one who, having no previous interest, and being under no obligation to pay off the mortgage, advances money for its payment at the instance of the debtor. 3 Pom. Eq. Jur., 201, 202; Sheldon on Subrogation, pp. 2, 30, 33; 5 Am. St. R., 79; 10 *Ib.*, 86; 17 *Ib.*, 193; 32 *Ib.*, 566; 35 Kans., 95; 27 S. W. Rep., 313. And so, where a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored and given its original priority. 1 Jones on Mortgages, § 971. I call especial attention to the unreported case in this state, *McMullen* v. *Home & For. Inv. Co.* (1894).

It would be most unjust to allow the appellees to avail of the statute of limitations as against the right of appellant to subrogation. *Staton* v. *Bryant*, 55 Miss., 261; *Barnett* v. *Nichols*, 56 *Ib.*, 622. They are not in a position to obstruct the flow of justice.

*J. A. P. Campbell*, on the same side.

1. On the case made by the pleadings the appellant is entitled to have preserved and enforced the relative priority of the incumbrance paid off with money advanced for that purpose. Equity will not allow an accident or slip or mistake to displace the relative position of incumbrancers where their rights only are involved. For this proposition very many authorities could be cited, but our own cases fully sustain it and need no support. *Cansler* v. *Sallis*, 54 Miss., 446; *McMullin* v. *Investment Co.*, 1896, unreported.

2. On the case made by the pleadings and exhibits the same result follows, on the same ground, for, granting that the Allens were not parties to an agreement for preservation of the former and then relative priorities, they are not harmed. They were subordinate before, and would remain so after subrogation. As between complainant and Peace, there can be no doubt that the precedence of complainant would be preserved. Allen & Co. occupy no higher ground than Peace.

3. Peace could not, under the circumstances, avail of the fact that the notes are barred. *Burnett* v. *Nichols*, 56 Miss., 622; *Staton* v. *Bryant*, 55 *Ib.*, 261. The question is not as to barring the debt, but as to whether equity will give effect to the intentions of the parties as to priority. Subrogation is not assignment, but a result wrought out by equity on a given state of facts to effect justice as between the parties.

*D. A. Scott*, for appellees.

1. The doctrine of subrogation is broad enough to include every instance in which one pays a debt for which another is primarily liable, and which, in equity and good conscience, should have been paid by the latter, but it is not to be applied in favor of one who has officiously, and as a mere volunteer, paid the debt of another for which neither he nor his property is liable. Nor is it applied where it will work injustice to others. Sheldon, Subrogation, § 1, and cases cited in note. Ap-

pellant was a mere volunteer, who, to place its money at interest, negotiated the loan. There will be no subrogation, unless the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability. *Ib.*, §§ 3, 11. He who seeks subrogation must come into equity with clean hands. It will not be applied to relieve a vendee against the consequences of his own wrongful act, or of the wrongful act of another under whom he claims. *Ib.*, § 44. One who pays off a prior incumbrance upon property in which he has no interest to be protected, will not by his payment be subrogated to the lien he has discharged, as against those having an intervening interest. *Ib.*, §§ 243, 245, 248. I refer especially to *Bunn* v. *Lindsay*, 95 Mo., 250, s.c. 6 Am. St. R., 48; 40 Mo., 486; 56 *Ib.*, 295; 69 *Ib.*, 667; 87 *Ib.*, 387. As to payment by volunteers, see *Slaton* v. *Alcorn*, 51 Miss., 72; Freeman on Judgments, §§ 446, 466; 7 Greenl., 38; Story, Eq. Jur., 1227; *Morris* v. *Lake*, 9 Smed. & M., 521; *Banks* v. *Evans*, 10 *Ib.*, 35; *Rollins* v. *Thompson*, 13 *Ib.*, 522; *Griffing* v. *Pintard*, 25 Miss., 173; 24 Am. & Eng. Enc. L., 281, 283; 20 Ill. App., 625; 104 Ind., 41; 10 Daly (N. Y.), 57; 41 N. J. Eq., 100; 44 Ark., 504; 25 *Ib.*, 119; 14 Bush (Ky.), 571; 86 Ky., 191; 3 Paige Ch., 117; 2 Brack., 252; 8 Lea, 602; Adams' Eq., 611; 1 Jones on Mort., 874*a;* 1 Pingrey on Mort., § 1095; 86 Va., 1; 75 Wis., 191; 124 U. S., 544; 14 S. W. Rep., 474; 93 Am. Dec., 783. The foregoing authorities also settle that one advancing money to be applied to paying off an incumbrance, is not entitled to subrogation. The case of *Howell* v. *Bush*, 54 Miss., 437, is decisive against the right of subrogation in this case.

2. Appellees may avail of the statute of limitations. They stand in the attitude to the property that Peace would if living. Besides, Peace's executor is a party. Any person in privity with the claim sought to be enforced may set up the statute in bar. 13 Am. & Eng. Enc. L., 709, 710; 37 La., 900; 1 Met. (Ky.), 495; 21 Cal., 495; 82 Am. Dec., 754.

*Edward Mayes,* on the same side.

There is no claim of any agreement with the Allens that the Union Company should be substituted to the lien of the Freehold Company. Therefore, the question of conventional subrogation does not arise. The question of equitable subrogation may arise between a debtor and his creditor, or between a creditor and a third party. This case is of the latter class—a controversy between creditors whose claims are, in themselves, equally meritorious.

Equitable subrogation is not applied in favor of one who, as a volunteer, either pays the debt of another or loans him money to pay it. Appellant contends that one who pays such debt at the instance of the debtor is not a mere volunteer. The answer to this is twofold: First, as a matter of fact the Freehold Company's debt was not paid by the complainant, but by the Corbin Banking Company, which reimbursed itself at the expense of its client, the Union Company. Second, as a matter of law, a mere request by a debtor to pay the debt is not sufficient. The text of Pom. Eq. Jur., § 1212, is too broad, and is not sustained by the authorities in the bold shape in which it is put. Even as between the debtor and creditor, subrogation is not allowed where the creditor, knowing all the facts, deliberately selects another security, or where it is contrary to the express agreement of the parties. See *Watson* v. *Wilcox*, 39 Wis., 643. A party who has acquired an intervening right cannot be set aside in such fashion, and for good legal reasons: (1) It unsettles titles and goes far towards nullifying the policy of the state in regard to registration laws; and (2) it opens wide the door for fraud and perjury. In *Howell* v. *Bush*, 54 Miss., 437, subrogation was denied, the court saying the facts negatived any intention to keep alive the first incumbrance, and clearly showed that the parties looked to a new security. Just so in this case.

As to the statute of limitations, the Union Company asks to assert the right of the Freehold Company, and it must take

it *cum onere*. The subrogee is put in place of the original holder of the lien, not in a higher and different place.

*Smith & Trezevant*, on the same side.

Complainant having failed to establish conventional subrogation, is driven to seek subrogation by operation of law. Against this right *Howell* v. *Bush*, 54 Miss., 437, is conclusive. Subrogation is not applied to the case of a party who originally had a right to choose his position and avoid the difficulty in which he may become subsequently involved, nor against a party who has acquired intervening rights. 24 Am. & Eng. Enc. L., 282, note. Nor where it will work injustice to others having equal equities. *Ib.*, 191, note 5, and cases cited. Nor where the party seeking it has been negligent, and where the enforcement of the right will injure others. *Ib.*, 192, 193, and cases cited. The demand of a creditor which is paid without any agreement that it shall be assigned or kept alive for the benefit of a third person, is absolutely extinguished by payment. Sheldon, § 241; 24 Am. & Eng. Enc. L., 281.

Subrogation is never applied in favor of a mere volunteer. Sheldon, § 1. Being a doctrine of equity, it will never be enforced at the expense of a legal right. *Ib.*, § 240. The Union Company is a mere volunteer. Prior to its payment to Peace it had no interest in the property. *Ib.*, § 243. This was not the case of a payment by one to save his property. Where money is loaned on a defective mortgage for the purpose of discharging a prior valid incumbrance, and it has been so applied, subrogation has been allowed, but not as against intervening liens. Sheldon, § 8; 37 Mich., 82; 16 Me., 158; 9 Gill, 185; 16 Cal., 195; 49 Iowa, 676. The remedy must be promptly sought. 130 Mass., 110.

The Union Company acquiesced in its new position, and refused to claim under the old mortgage, but foreclosed under the new one. The old mortgage had been paid, and there was no lien to which complainant could be substituted. 9 Bax.,

119.    It was not intended that the old mortgage should be kept alive, and the complainant cannot now, by *ex post facto* intention, claim the benefit of it.    1 Ldg. Cas. in Eq., 155; 9 Bax., 119;  6  Johns. Ch.,  396;  1 Lea,  577.    Where there is a mere loan to pay the debt of another, it depends on the intention whether there is subrogation.    Dixon, 167; 7 Martin (U. S.), 602; 95 Mo., 250.

Complainant having elected its security, must look to that alone.    *Predgen* v. *Horn*, 15 S. W. R. (Tex.), 559; 95 Ill., 39; Sheldon, § 240.    When equities are equal, the first in time prevails.    Pomeroy, § 718.    The Union Company's equity is not equal, because its agent knew of Allen's priority.    The Corban Company was agent of the Union Company, and its knowledge is the knowledge of its principal.

Argued orally by *J. H. Watson* and *J. A. P. Campbell*, for appellant, and by *D. A. Scott*, *M. B. Trezevant* and *E. Mayes*, for appellees.

COOPER, C. J., delivered the opinion of the court.

Repeated examination of the record has failed to satisfy us that Allen & Co. agreed that the mortgage executed by Peace to the appellant, was to have priority over the one he executed to them.    There is much in the record suggesting that they did, but the fact is not stated to be true by any witness having personal knowledge thereof.    Martin, who was a party to the negotiations, is not clear, and seems to have made contradictory statements.    Peace is dead, and the Allens both testify that they thought the debt having precedence over their security was that secured by the mortgage to the Freehold Company, as to which there is no controversy in reference to their waiver. The whole correspondence between the senior member of the firm while in New York, with his firm in Memphis, strongly supports his testimony that in his negotiations with attorneys in New York, he thought the attorney was the representative of

the Corbin Banking Co., that that company represented the creditor, and that the Freehold Company was the creditor. Strangely enough, the fact was not mentioned, during these interviews, that the debt to the Freehold Company had been paid and a new loan secured by Peace from another company, the appellant. Mr. Allen spoke of the debt as a renewal, expressed surprise that the amount had been so greatly augmented by accumulated interest, and, though always recognizing the priority of the security over that of his firm, seems to have labored under the impression, not corrected by the attorney of the appellant, that the debt was that due to the Freehold Company. We do not understand how the junior member of the firm could then have been of the same opinion, for the year before he had been approached by Martin and requested to consent for his firm that appellant's security should have precedence, and had declined, stating that if the Corbin Banking Co., in preparing the papers, had made a slip, by reason of which his firm had secured an advantage, it would not be waived. But it does appear that he, in all the correspondence with his father, recognized the priority of right of the claim asserted by the attorney with whom his father was negotiating, and we cannot understand why he should do so, if at the time he remembered or recalled the fact that, by reason of mistake in preparing the new securities, his firm had secured priority. So, too, the recitals in the new security taken by Allen & Co., while suggestive of a distinct recognition of the mortgage to appellant, is not, in our opinion, so nearly conclusive as counsel for appellant contend. As originally written, it referred to a prior mortgage to the Freehold Company, which fact strongly supports the contention of the Allens that they were referring to the old mortgage. The name of the Freehold Company was, upon the suggestion of Peace, stricken out, and appellant contends, and with force, that this was for the purpose of recognizing the priority of the new mortgage; but the Allens reply that the change was not made for such purpose, but because Peace told

them the name as written was not the full name of the creditor company, the company making the original loan, as they understood, and that the change was made not to recognize the superior right of a new party, but to correctly name the old creditor, and in this the Allens find support in the fact that a part of this recital refers to the mortgage as "now of record," which the mortgage to the Freehold Company was, and which that to appellant was not. Considering the sums involved, the business seems to have been very loosely transacted. We cannot say, on the whole evidence, that the parties on one side were not referring to one thing and those on the other to another, and so their minds never met. We can see no other explanation which does not impute perjury to some one, and in that view the testimony may be reasonably harmonized. We, therefore, are of opinion that no contract of waiver is established against Allen & Co., either in fact or by estoppel; but it is entirely certain that appellant or its representative understood from Peace that Allen & Co. had agreed to waive their priority in favor of the new mortgage to be given by him to secure it in the large loan it was to make. Peace's application for the loan states that the property to be mortgaged was unincumbered. The Freehold mortgage, for the payment of which a larger part of the money was desired, was unquestionably superior to that of Allen & Co., and there is nothing to suggest the improbable purpose of the lender to pay off the first mortgage, let in the second, and itself accept a third. Peace unquestionably agreed to give to the appellant similar security to that held by the Freehold Company—*i. e.*, a first mortgage on the property. It is true, he did not agree to give the identical security, the old mortgage kept alive for the benefit of the new lender, but the very essence of his agreement was to give a mortgage which should primarily bind the property. This, on the developed facts, he has failed to do. The first question presented is whether, as between Peace and the appellant, the case made would entitle the appellant to relief by

the remedy of subrogation. If this be answered in the affirmative, the next inquiry will be whether, by reason of the intervening rights of third persons (Allen & Co.) this relief should be denied.

Cases may undoubtedly be found which would deny subrogation, under the circumstances, even as between the appellant and Peace. Our dissenting brother will collect them in his opinion; they are cited in the briefs of appellees' counsel, and need not be here again set down. But there are other cases holding a different view, and we think with better reason. The principle of equitable subrogation does not arise from contract (for that is conventional subrogation), but is a creation of the court of equity, and is applied in the absence of an agreement between the parties, where otherwise, there would be a manifest failure of justice. It is never enforced for the protection of mere strangers and intermeddlers in the affairs of others, nor can it be invoked to override and displace the real contract of the parties; that is, where the security contracted for is in fact given but its legal effect is not that expected, as in *Howell* v. *Bush*, 54 Miss., 437. Equitable subrogation is in some of its characteristics nearly related to the principle of equitable estoppel, and may, in a sense, be called the acting and moving, while equitable estoppel is the obstructive, member of the same family.

The objections made by counsel for the appellees (1) that appellant was a stranger to the property, and, therefore, cannot invoke the rule of subrogation, and (2) that, since it was agreed that the securities to which subrogation is now sought should be paid off and discharged, there is nothing to which appellant can be subrogated, are answered by many authorities. (*a*) One who at the instance of the debtor advances money to be used by the debtor in the payment of a prior security, is not a stranger or intermeddler in his affairs. Sheldon on Subrogation, § 247; *Milton* v. *Mayberry* (Wis.), 6 Law Rep. Annotated, 61; *Emmert* v. *Thompson*, 49 Minn., 386, s.c. 32 Am.

St. Rep., 566; *Johnson* v. *Barrett*, 117 Ind., 551; *Gilbert* v. *Gilbert*, 39 Iowa, 657; 3 Pom. Eq. Jur., § 1212.    (b) The fact that the mortgage was paid, and intended to be paid, is immaterial.    Equity will consider it as yet alive so long as the rights of parties require.    *Walker* v. *King*, 45 Vt., 525; *Cobb* v. *Dyer*, 69 Me., 494; *Wheeler* v. *Willard*, 44 Vt., 640; *Barnes* v. *Mott*, 64 N. Y., 397; *Texas Land Co.* v. *Blalock*, 76 Texas, 85; *Crippen* v. *Chappel*, 35 Kan., 495; *Cansler* v. *Sallis*, 54 Miss., 446.    In *Whitesell* v. *Tex. Loan Agency*, 275 S. W. Rep., 313, precisely the same questions here presented were decided. We have not had access to the report, but doubt not the quotations of counsel from the opinion are correct.

The present case is, as to the matters hereinbefore referred to, fully covered by the decision of this court at the April term, 1894, in the case of *McMullen* v. *Home Investment Co.*, in which no opinion was written.    That case and *Cansler* v. *Sallis*, 54 Miss., 446, are decisive also that, since Allen & Co. are, by applying the principles of subrogation, placed in no worse attitude than they originally were, the fact that they have a mortgage upon the same property cannot defeat the right of subrogation invoked by the appellant.

The fact that the debts protected by the securities to which subrogation is sought are now barred by limitation cannot avail. Peace's representative will not, in equity, be permitted to invoke the statute of limitations to defeat the security to which subrogation is sought.    The fraud of Peace, in representing that the property was unincumbered and of accepting from the appellant the large sum of money it advanced on the faith of his representations, would preclude him, if alive, from invoking the lapse of time as a bar to the remedy by which the injury he has sought to inflict can be avoided.    He would be estopped to interpose the defense, and his representative, who stands in his shoes, is bound by the same rule.    *Staton* v. *Bryant*, 55 Miss., 261; *Barnett* v. *Nichols*, 56 Ib., 622; *Kelly* v. *Wagner*, 61 Ib., 299.

We see nothing inconsistent in the conduct of appellant in claiming under the mortgage executed by Peace, selling thereunder, entering into possession of the land, and attempting to defend its title thus acquired, and, failing in that aspect of the cause, invoking the right of subrogation to the securities the money it loaned has paid. It had reason to believe, from the interviews with Mr. Allen, that his firm recognized the priority of its security; indeed, it appears that no other idea was entertained by Allen & Co. until long after the appellant had caused the mortgage it held to be executed, and after they had foreclosed their own mortgage, to which proceedings the appellant was not made a party, because it was then thought that it was the senior incumbrancer, and therefore not a necessary party to the suit. The *status quo ante* the cancellation of the securities should be restored, the appellant held to account as a mortgagee in possession of the land, entitled to charge against it all prior incumbrances discharged by the money it loaned.

*The decree is reversed, and cause remanded, to be further proceeded with in accordance with this opinion.*

Whitfield, J., dissenting:

I dissent from the judgment of the court. First, the case, as to subrogation, may be condensed thus: Peace, the common debtor of the Freehold Company and Allen & Co., owed the former, say, $26,000, and the latter $25,000, the Freehold Company having the senior and Allen & Company the junior mortgage. Peace wanted more money to pay off the Freehold Company and to farm on. He applied to the Union Company, through its agent, the Corbin Banking Company, for a loan of $38,000, the Corbin Banking Company intentionally and fraudulently keeping off the application the Freehold mortgage and all the Allen & Co. mortgages, the Corbin Banking Company being the agent of the Union Company. The Union Company, through its said agent, and Dr. Peace, agreed expressly that the Freehold Company's mortgage should be paid

off, satisfied and forever extinguished—not kept alive.  It was so paid off; the said mortgage was actually sent by the Corbin Banking Company from New York to Martin, at Memphis, to be delivered up to Peace, and, in the eye of the law, was as effectually in his hands as if actually delivered.  Allen & Co. were entirely ignorant of all this—never knew or supposed there was any new creditor, but understood that the Freehold Company's debt was being renewed and continued.  The Freehold Company's debt being thus paid off and satisfied by express agreement of the Union Company, through its agent, the Corbin Banking Company, and Peace, and in exact accordance with their actual intention, the Allen & Co. trust-deed stood first in legal priority, Allen & Co. having had nothing whatever to do with the dealings between Peace and the Union Company.  My brethren do not differ from me as to Allen & Co. not knowing.  They are driven from the ground of estoppel by the clear shining of manifest truth from the face of this record.

The reason why the Corbin Banking Company did, as the agent of the Union Company, so agree that the Freehold Company's mortgage should be paid and satisfied, and not kept alive, is obvious.  That company wanted to shift a bad debt from its shoulders to those of its principal, and secure, besides, to itself the $8,000 it was already out in the purchase of the Hopson decree, and $8,700 it charged as commissions for negotiating, as it puts it, the loan of $38,000; and it purposely concealed from its principal the fact of the existence of the Freehold mortgage, by paying it and discharging it and sending it actually to Martin to be delivered to Peace.  The Union Company, through its agent, the Corbin Banking Company, finding out that Allen & Co. stood upon their legal rights (the Union Company's mortgage not having been executed for some months after the payment of the Freehold mortgage and the execution and recording the Allen & Co. mortgage), that company asks this court, not to apply the principles of subrogation

to the facts as they were at the time of the occurrences, not to the real case as thus made by the actual agreement and intent of the parties at the time, but to a state of facts which it alleges but signally fails to prove, to a case conjured up to meet the desperate exigency of its genuine situation.    In short, it is an effort to work out subrogation by *ex post facto* intention—precisely that; nothing more, nothing else.    I have not so learned the law of subrogation.    So to hold, on the facts of this record, is plainly to hold that in no case, where intervening rights do not appear; under any circumstances, where a prior mortgage is paid off by a new lender, a junior mortgagee can maintain his accruing legal priority, but that in all cases payment—and payment merely, payment only, payment without any qualification—entitles the lender to subrogation.    This may be something else; it is not the creature of equity known as subrogation.    Sheldon on Subrogation (2d ed.), p. 364, notes 8 and 9; §§ 240–1, 247; p. 9, note 9; p. 12, note 4; p. 369, notes 2 and 3; p. 371, note 3, with the authorities therein cited, especially *Gardenville Association* v. *Walker*, 52 Md., 452.

I refer especially, also, to *Howell* v. *Bush*, 54 Miss., 437, within the principle of which case this case, in my judgment, falls precisely.    With all deference, I think the opinion of the court overrules that case.    It is impossible for me to distinguish it in principle from the case at bar, and, in my judgment, it is controlling and decisive here.

But, secondly, the Union Company elected its remedy.    It repudiated the "Freehold" mortgage as a basis of its claim.  It allowed it actually, as to Peace, to run past maturity, perhaps the full statutory period, without selling under it.    It did sue under its own mortgage, bought under it, is in possession under it, and is sued in ejectment as so in possession.    It is estopped now to change its election.