## Z. T. DORRAH, ADMR., v. J. H. HILL ET AL.

1. PRINCIPAL AND AGENT. *Contract in fraud of principal.*

An agent cannot bind his principal by a transaction effected without her knowledge, in which, to the knowledge of the other party, he employs her means intrusted to him for investment so as to procure the payment of a debt long due by such other person to himself, since he acts therein for himself as well as his principal.

2. SAME. *Trust deed in favor of agent. Subrogation of principal. Case.*

P. sold land to H., and received in consideration his notes secured by a deed of trust on the land. P. loaned H. a small amount of money belonging to Mrs. G., and took as security a deed of trust on his personalty. The purchase money notes given by H. were not paid at maturity, and only a small amount was paid P. to the credit of Mrs. G. P., as agent for investment, held money belonging to Mrs. J., appellant's intestate, sufficient to cover H.'s indebtedness to himself and Mrs. G. He loaned this money to H., who made a note to Mrs. J., who was then living, and executed a deed of trust to secure the same on the land and personalty. The old notes to P. and Mrs. G. and the old deeds of trust were then released and destroyed. H. had knowledge that P. was acting as agent for Mrs. J., and that he was to retain her money in payment of the sums due to him and Mrs. G. The new note and trust deed remained in the hands of P. until his death, when they were delivered to appellant as Mrs. J.'s administrator, who, upon discovering that the wife of H. had not joined in the new trust deed so as to bar the homestead right, sought, by bill in equity, to have the original trust deed in favor of P. reinstated, and himself subrogated as Mrs. J.'s administrator to the rights of P. thereunder. *Held*, that P. could not act for both himself and Mrs. J., his principal, and that, since the transaction, made with H.'s knowledge of the fiduciary relation, was not binding on Mrs. J. or her estate, appellant should be subrogated to the original purchase money security released by P.

FROM the chancery court of Noxubee county.
HON. T. B. GRAHAM, Chancellor.

The case is stated in the opinion of the court and in the dissenting opinion of Whitfield, J.

*J. E. Rives*, for appellant.

The trust deed executed by Hill upon the land in controversy, in favor of Mrs. Jeffries, to secure the $650 note, which we are seeking to collect by foreclosure of the trust deed, was given in renewal and extension of the trust deeds to Mrs. Gaston and R. C. Patty, which latter deed had been given by Hill to Patty to secure to him the unpaid purchase money of the land embraced in the deed of trust.    To the extent that it was a renewal of the Patty trust deed, it is valid and binding, although the land is the homestead of Hill, and although Mrs. Hill never joined in the trust deed.    *Billingsley* v. *Niblett*, 56 Miss., 537.

The relations of the parties at the time the trust deed was given and the Gaston and Patty trust deeds were canceled, were such, that the cancellation of the Patty trust deed was such a fraud upon the rights of Mrs. Jeffries, that a court of equity will either enforce the Jeffries trust deed, or will revive the Patty trust deed and enforce it for her benefit.    Patty was at that time the agent of Mrs. Jeffries and intrusted by her with her money for the purpose of lending it on good and sufficient security.    He had the sole management and control of the lending of the money intrusted to him, except it was his duty to take good and ample security for all loans.    At that time Patty had an individual interest in making this loan to Hill.    Hill was owing him, and to secure the debt he held a trust deed upon this land, which was a valid lien, the debt owing to Patty being for the purchase money of this land.    By this loan Patty got the use of Mrs. Jeffries' money.

It is alleged, and not denied, that not one dollar of money passed to Hill at that time and not a dollar passed from Hill to Patty to warrant the cancellation of Patty's trust deed, so that it necessarily follows that the only consideration for the note

and trust deed in favor of Mrs. Jeffries was the cancellation of the trust deed in favor of Patty and the delivery up of the Hill note.    Hill knew of this relation, for his dealings were with Patty alone.    He knew that the interest of Patty was in direct conflict with that of his principal.    He knew that he was not parting with a dollar of money, and that, in effect, this was only a transfer of the Patty trust deed to Mrs. Jeffries.    Could a court of equity permit Hill to thus join in with the agent of Mrs. Jeffries and perpetrate such a fraud upon her?    One dealing with an agent in a matter affecting his principal and knowing that the interest of the agent is adverse to that of the principal, should be held to the duty of ascertaining that the acts of the agent are authorized by the principal.    *Farrington* v. *South Boston Railroad Co.*, 15 Am. St. Rep., 222.    Mrs. Hill had no right except a mere veto power upon the alienation of the land by her husband.    A court of equity will not allow an agent to use trust funds in any manner by which he himself acquires a special benefit to the detriment of his principal; it will not allow him to invest the funds in securities which he himself held; it would not allow the debtor to take advantage of any defect in securities while in the hands of the principal, which could not have been taken while they were in the hands of the agent.    In such case, equity would allow the principal to be subrogated to the rights which the agent had at the time of the transaction, and this would be the case, even though the original securities were canceled of record.    Pomeroy Eq. Jur., § 1211.    If the money of Mrs. Jeffries in the hands of Patty had actually passed to Hill, and he had actually paid off Patty's trust deed, under the authority of Mr. Pomeroy, *supra,* Mrs. Jeffries would have the right to enforce her trust deed, or have the Patty trust deed revived for her benefit.    Pom. Eq. Jur., §§ 959, 1078, and 1077.

In this case it is apparent that the parties did not intend to extinguish the lien for the purchase money.    That a mere change in the form of an indebtedness will not discharge a lien,

unless it is apparent that the parties intended to extinguish it, is well settled. *Howell* v. *Bush*, 54 Miss., 437; *Cansler* v. *Sallis*, 54 Miss., 449. There can be no doubt that, under the allegations of this bill, and the facts in this case, the intention of the parties was to substitute the Jeffries note and trust deed for the Patty note and trust deed, for some convenience to the parties. The convenience in this case was that Patty got the use of Mrs. Jeffries' money, and he was joined in this scheme by Hill, who knew the facts. Where this is the case, a court of equity will look through the form to the substance, and keep alive the original security, if justice requires it. *Cansler* v. *Sallis, supra.*

Independently of what might have been the intention of the parties at the time—even conceding that it was the purpose of Patty and of Hill that the debt to Mrs. Jeffries should be a new debt, that a mere change was not contemplated, and that the debt to Patty should be fully extinguished, still justice and equity require that the original security should be kept alive. This transaction was had in the absence of Mrs. Jeffries. She knew nothing about it; the note and trust deed were never delivered to her; and, after her death and the death of her agent, Hill recognized the fact that this was a renewal of the debt for the purchase money. The chancellor was misled by *Howell* v. *Bush*, 54 Miss., 437. The facts in that case are very different from the facts in this case.

*Orr & Dinsmore*, for appellees.

(The brief filed on behalf of appellees is not in the record, and after diligent search and inquiry, the reporter is unable to find the same.)

COOPER, C. J., delivered the opinion of the court.

The appellant, as administrator of the estate of Mrs. Frances A. Jeffries, exhibited his bill against the appellee, asking to be subrogated to the security of a certain deed of trust executed by

the appellee on the eighteenth day of January, 1889, to secure the payment of a debt of $450, and interest thereon, in such deed described, to one R. C. Patty.  On final hearing this relief was denied, and the complainant appeals.

The facts, chronologically stated, are as follows: In the year 1885, Patty sold to Hill a small tract of land, at the price of $450, for which he accepted the notes of Hill, payable at stated future times.  On the eighteenth day of January, 1889, Hill, not having paid any part of the purchase price of said land, executed a deed of trust to Patty to secure the same.  On the same day, Patty, acting as the agent of one Mrs. Gaston, loaned to Hill the sum of $264, and received from him, to secure its payment, a deed of trust on certain personal property.  On the first day of January, 1890, Patty had in his hands, as the agent of Mrs. Jeffries, a sum of money which she had intrusted to him to lend, or otherwise invest, for her account.  Hill had paid no part of the purchase price of the land, and not much of the amount due by him to Mrs. Gaston, and she desired to have the balance due her paid by him.  Patty, acting for himself and Mrs. Gaston and Mrs. Jeffries, accepted from Hill his note for $650, payable to Mrs. Jeffries, in payment of the debt owing to him for the purchase money of the land, and in payment of the balance due to Mrs. Gaston.  He delivered up to Hill the notes by which these debts were evidenced, and canceled the deeds of trust by which said notes had been secured, and accepted from Hill a deed of trust, upon the land and personalty, to secure the note then executed by him to Mrs. Jeffries.  This note and deed Patty retained in his possession until his death, which occurred in December, 1890.  Mrs. Jeffries died in August, 1890, not having been advised by Patty of the fact that he had made the investment of her money.  After the death of Patty, the note and deed of trust were delivered by his representative to the administrator of Mrs. Jeffries.  Hill had made some small payments to Patty on the note, and also paid two or three small sums to the administrator of Mrs. Jef-

fries.  It was then discovered that the wife of Hill had not joined in the deed securing the note to Mrs. Jeffries, by reason of which, since a part of the land was a homestead, the security, as to it, was invalid, under our statute requiring the wife to join in the conveyance of the homestead.  Hill, it appears, thereupon promised to procure his wife to join him in the execution of a new deed of trust, but afterwards refused to do so, and the appellant exhibited his bill setting up the facts, and praying that the deed of trust executed by Hill to Patty, on the eighteenth of January, 1889, be reinstated and enforced. On final hearing it was agreed that the sum due by Hill was $500, for which the court rendered a final personal decree against him, and directed the land, in excess of the homestead exemption, to be sold for its payment, and, on the cross bill of Hill, decreed cancellation of the deed as to the land composing the homestead.

It is said by counsel that the chancellor was controlled in his decision by the case of *Howell* v. *Bush*, 54 Miss., 437.  In that case Howell, who owned an incumbered homestead, borrowed the money from Bush to pay off the debt, agreeing to give as security a deed of trust on the property.  This deed he executed, but there, as here, the wife did not join in the deed, and Bush sought subrogation to the rights of the incumbrancer, whose debt the money he loaned had paid.  The court held that, since Bush had carved out and selected his own security, and had canceled, and intended to cancel, the original incumbrance, and since neither fraud nor mistake of fact was alleged or proved, the original incumbrance could not be revived for his protection.

If Mrs. Jeffreys had loaned the money to Hill and taken the invalid security, the case of *Howell* v. *Bush* would have controlled.  The reason of that case, however, was that the lender had carved out his own security, which failed of effect because of a mistake of law.  It does not decide that there can be no subrogation, in any event, to a security which was discharged,

and intended to be discharged, by the parties.   We need. not again examine this question, as it is fully discussed in the opinion of the court, and in the dissenting opinion of Judge Whitfield in *Trust Co.* v. *Peters*, 72 Miss., 1058.   Starting with the proposition that, under circumstances, a security, though once intentionally canceled, may be revived and enforced by a court of- equity, the single inquiry is whether the facts of this case bring the complainant within the principle on which relief will be granted.

In the administration of relief by subrogation it will be found that the jurisdiction of equity rests largely upon the prevention of frauds and relief against mistakes, and the expansion of the rule has so nearly covered the field that it may now be said that wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation if that be the most efficient and complete that can be afforded.

We are of opinion that the complainant was and is entitled to the relief prayed in this cause, for the reason that the arrangement made between Patty, the agent of Mrs. Jeffries, and the defendant was one which Patty had no right to make, and because the defendant, by the very nature of the transaction, was bound to know, and did know, that the agent was, while professing to act for Mrs. Jeffries, directly interested in the negotiation, and could, therefore, only bind his principal by her consent, she being fully informed of what he was doing or had done.   We need not cite authorities for the proposition that the agent must be loyal to his principal, and, like all other fiduciaries, is forbidden to make a profit by a breach of trust. An agent employed to sell cannot be a buyer, nor one employed to buy be a seller in the matters intrusted to him by his principal.   Wharton on Agency, §§ 232, 239, 594, 760.   "Where an agent, without knowledge of his principal, becomes engaged in an adverse interest, he is guilty of a gross breach of trust, making himself personally liable to his principal for the damage, and vitiating, at his principal's election, any contract made

under the influence of such disloyal engagements. And this rule obtains even where the agent reaps no benefit from the transaction.'' Wharton on Agency, § 244; *Baughn* v. *Shackleford*, 48 Miss., 255.

In *Ex parte James*, 8 Ves., 337, Lord Eldon said that ''the doctrine as to purchasers, assignees and persons having a confidential character, stands much more upon general principles than upon the circumstances of any individual case. It rests upon this: that the purchase is not permitted in any case, however honest the circumstances, the general interests of justice requiring it to be destroyed in every instance, as no court is equal to the examination and ascertainment of the truth in much the greater number of cases.''

The fact is apparent that in making the loan to Hill, Patty, the agent, was acting in a matter in which his interests were adverse to those of Mrs. Jeffries. He had sold the land to Hill years before, and no part of the purchase price had been paid. It is not unreasonable to assume that it was not to him a desirable investment of his own funds, and that he took advantage of the opportunity afforded by the circumstance of having Mrs. Jeffries' money in his hands to transfer his claim against a slow debtor to his principal. Whether this be true, however, is immaterial, for Mrs. Jeffries was entitled to the exercise of his judgment, uninfluenced by his personal interests, in making loans of her money, and this she did not have. Whether the investment in the particular case would have been a desirable one if the deed had been executed by both Hill and his wife, is not the question. That would be the ''circumstance,'' as Lord Eldon puts it, of the particular case. But the rule, as he says, rests, not upon the particular case, but upon general principles. The disqualification to make the arrangement, and thereby bind Mrs. Jeffries, arose from the fact that, in so doing, he was acting for her and for himself.

Nor can it be doubted that Hill knew precisely what was being done—that Patty was to retain the money of his princi-

pal in payment of the sum due him, and that he, Hill, was to execute his note to Mrs. Jeffries, to represent the sums he had before owed to Patty and Mrs. Gaston. In truth the very transaction demonstrated that Patty was representing both himself and his principal, for he agreed, as an individual, to cancel the deed of trust and note he held against Hill, and deliver them over to him, and this was done as a part and parcel of the arrangement. Dealing thus surreptitiously with the agent was a fraud upon the principal, and Hill, equally with Patty, was subject to the right of the principal to repudiate the contract upon receiving knowledge of its character. *Norris* v. *Taylor*, 49 Ill., 18; *Brockett* v. *Richardson*, 61 Miss., 766; *Panama Co.* v. *India Rubber Co.*, L. R., 10 Ch. App. Cas., 515.

In the case of *Panama Co.* v. *India Rubber Co.*, *supra*, the complainant had contracted with the defendant company to lay a submarine cable, payments to be made, as the work progressed, upon the estimates and certificates of Sir C. T. Bright, the complainant's engineer. After the contract had been made, the defendant made a contract with Bright to lay the cable. The complainant had paid to the defendant company £60,000 on the contract, when it discovered that its engineer had entered into the contract with the defendant, and thereupon exhibited its bill for cancellation of the contract and to recover the sum it had paid. Full relief was afforded, the court holding that any surreptitious dealing between one principal and the agent of the other principal, is a fraud on such other principal, cognizable in equity. James, L. J., said: "That I take to be a clear proposition, and I take it, according to my view, to be equally clear that the defrauded principal, if he comes in time, is entitled, at his option, to have the contract rescinded, or, if he elects not to have it rescinded, to have such other adequate relief as the court may think right to give him."

In that case, as in this, the fraud upon the principal did not consist in an actual purpose to cheat the principal. In that case the fault was in dealing with the agent in such manner as

to create personal interests inconsistent with the discharge of his full duty to the principal. In this it was in dealing with him in reference to a matter in which he had an adverse personal interest. We do not suppose the defendant, Hill, at the time the arrangement was made, purposed not to pay the debt to Mrs. Jeffries. But he now refuses to do so, and relies upon the cancellation by Patty of the original security as a reply to the complainant's prayer for subrogation to its benefit, and the complainant responds that this cancellation was a part of a contract entered into between Patty, the agent of Mrs. Jeffries, and the defendant, by which she was not bound; that the defendant, by the very nature of the transaction, was advised that Patty, by reason of his adverse interest, was incompetent to bind his principal, and both he and Hill took the chance of ratification or repudiation by the principal. We take it to be the law that Patty could not, without express authority from Mrs. Jeffries, thus transfer to her his claim against Hill, and that Hill, having notice of the want of authority of the agent, stands in no better situation, and that the representative of Mrs. Jeffries has the right to repudiate the contract and have such restoration of the *status quo* as is now practicable. And since it is evident that only by subrogating the complainant to the security afforded by the deed of trust to Patty can adequate relief be afforded, the chancellor should have so decreed.

So much of the decree as denies to complainant the right of subrogation is reversed, and a decree may be entered here directing a sale of the property described in complainant's bill for the amount agreed to be due and all costs.

*So ordered.*

WHITFIELD, J., dissenting.

In addition to the facts set out by my Brother Cooper, I deem it important, to a proper understanding of this case, that certain other facts, shown by this record, and fully set out in the very clear and fair abstract of the case made by the learned counsel for appellant, should be stated. In the opinion of the

court it is said that, after some small payments had been made on the note to the administrator of Mrs. Jeffries, "it was then discovered that the wife of Hill had not joined in the trust deed securing the note to Mrs. Jeffries." But the wife of Hill had not joined in the first trust deed, executed in December, 1885, nor in the second, executed in January, 1889—both made to secure Patty in the payment of the purchase price of the land. Again, it is stated, in the opinion of the court, that, "on final hearing, it was agreed that the sum due by Hill was $500." To avoid misconception, it should be stated that the admission was that that sum "was due on said note"—the new note to Mrs. Jeffries—and not on the purchase money of the land. Patty, some time after the execution of the second trust deed, to secure himself, in January, 1889, had in his hands money belonging to Mrs. Jeffries, as her agent. "He was intrusted by her to invest her money to her best interest, and in none of such investments was she consulted."

About the first of January, 1890, Patty had Hill to execute a note to Mrs. Jeffries for $650, and a trust deed to secure it, in which, as usual between Patty and Hill, Hill's wife did not join. This sum was to pay Patty the balance of the purchase money on the land, and Mrs. Gaston a loan due her by Hill, Patty having also acted as the agent of Mrs. Gaston. Patty is dead and Hill did not testify, so that what took place between them is unknown. This sum of money ($650) was not actually, it seems, handed by Patty to Hill, and then handed back by Hill to Patty, as the agent of the two lenders—Mrs. Jeffries and Mrs. Gaston—but the transaction, so far as this record discloses, was, in effect, nothing but a mere loan by Patty to Hill, as agent of Mrs. Jeffries, and a payment out of that loan, by Hill to Patty, as such agent, of the unpaid purchase money of the land, and the debt due Mrs. Gaston. The actual manual handing back and forth of the money would have been a perfectly idle ceremony. The notes and trust deeds, executed by Hill to secure Patty and Mrs. Gaston, were canceled and

delivered up, those debts being thereby extinguished and paid
off in full.    There is absolutely nothing in the record to show
any intention whatever, on the part of Patty, as the agent of
Mrs. Jeffries and Mrs. Gaston, and Hill, to keep those debts
alive, or to renew them.    The intention of both accorded per-
fectly with, and is shown by, what they did.    They extin-
guished fully and forever those debts, and the notes and trust
deeds evidencing and securing them were canceled and sur-
rendered up to Hill.    Further, the note and trust deed for the
purchase money were not assigned to Mrs. Jeffries.    On the
contrary, she, through her agent, Patty, chose her own secu-
rity—carved out a new and independent security—and various
payments were made thereon.    Hill was an illiterate man, who
could not '' read writing much,'' but was believed, in the lan-
guage of one of counsel, testifying, to be '' a worthy poor man.''

  This being the case made by the record, it seems to me that
it is impossible to distinguish it from *Howell* v. *Bush*, 54
Miss., 437, and that that case is decisive of it.    That case was
thoroughly considered.    There was an original opinion, a re-
hearing, a second opinion, and a further petition for reargu-
ment denied.    Said Judge Campbell, speaking for a unanimous
court: ''A new trust deed was given by Howell, and the old
one extinguished.    There was no intention to keep it alive.    It
was not relied on, and was therefore canceled.    It was not
done by fraud or mistake, but honestly and intentionally, for
the purpose of getting it out of the way.    True, it was done
ignorantly as to the law requiring the joinder of the wife to
make the new deed of trust valid as against the homestead right,
but that does not alter the fact that the parties did not intend
to keep the former trust deed alive, but to cancel it and rely
exclusively on the new one taken.    When parties capable of
contracting make their own arrangements, and there is neither
fraud nor mistake of fact, equity will not interpose to thwart
their designs or change their agreements.    It will not make
contracts for parties.''    And this doctrine has been as expressly

declared in *Skaggs* v. *Nelson*, 25 Miss., 94, and *Pitts* v. *Parker*, 44 Miss., 247, and was always the law here, as I understand it, until the unreported case of *McMullen* v. *Home Investment Co.* (1894), and *Trust Co.* v. *Peters*, 72 Miss., 1058, in which I dissented.    I said, in my dissenting opinion in that case, that it practically overruled *Howell* v. *Bush*, *supra*, and I think the correctness of that remark is unanswerably demonstrated by the result in this case.    My brethren, however, profess to adhere to both *Trust Co.* v. *Peters* and *Howell* v. *Bush*. How they do so, with all deference, I cannot comprehend, for, as I view them, there never were two cases in more patent and irreconcilable conflict.    Entertaining their views of the doctrine of subrogation, it seems to me they should expressly overrule *Howell* v. *Bush*, and not leave it to further mislead the bench and bar.

The learned counsel for appellant makes an ingenious argument to avoid the effect of *Howell* v. *Bush*, insisting earnestly that what took place was a renewal of the purchase money debt.    But the parties were changed and a new creditor introduced, and I understand my brethren to concur with me that that contention cannot be maintained.    I conclude, therefore, as to subrogation, first, that the vendor's lien was paid off and discharged, when the trust deed to Patty, the vendor, was satisfied, canceled, and delivered up to Hill, and the trust deed to secure Mrs. Jeffries was given, and there was no vendor's lien existing, when the bill was filed, to which complainant could be subrogated.    *Skaggs* v. *Nelson*, *supra*, is conclusive of this. For, secondly, if it be said that the vendor's lien can now be assigned, the perfect response is that the fact in this case is it was neither so assigned, nor intended by the parties to be so assigned.    Had it been, the note and trust deed to Patty would not have been canceled and delivered to Hill, but assigned, as they might easily have been, to Mrs. Jeffries.    And, thirdly, equity never enforces conventional subrogation against the proven intent of the parties.    Because what Patty thought at

the time of the execution of the trust deed to secure Mrs. Jeffries, and Hill also thought, was a valid trust deed, has turned out to be invalid, and their thought about its validity has been found to be a mistake of law, honestly committed by both, to substitute the situation as it has ultimated for the situation as it was when the Jeffries trust deed was made, and impute to the parties to that contract an intention they would have entertained had they known then that the joinder of the wife was essential to the validity of that trust deed, is, it seems to me, to repeal the statute requiring the joinder of the wife, and to work out subrogation by *ex post facto* intention, and I see here no element of legal subrogation.    See authorities cited in my dissenting opinion in *Trust Co.* v. *Peters, supra.*

Turning now to the very clear statement of the feature of the law of agency discussed, as put by my Brother Cooper, I have to say that I heartily approve it.    But I have searched the record in vain for any testimony to which that principle applies.    The answer emphatically denies any fraud on Hill's part—any co-operation on his part, with Patty to defraud Mrs. Jeffries—and avers that if there was any "fraud on Patty's part it lies between complainant and her agent."    And the testimony wholly fails to connect Hill with any fraud which Patty practiced on his principal, Mrs. Jeffries.    I quite agree with my Brother Cooper's statement of the abstract law, but I differ from him wholly as to its applicability to the concrete case before us.    Says Mr. Mechem (Mechem on Agency, § 796): "A third person, however, who deals with an agent, is not liable to the principal for a fraud perpetrated by the agent upon his principal in that transaction, unless such third person was a party to the fraud."    To this proposition he cites the cases of *Mason* v. *Bauman*, 62 Ill., 76, and *Bacon* v. *Markley*, 46 Ind., 116, both directly in point.    In the former the court say, at page 81: " It is, however, urged that Stackweather was appellee's agent.    .   .   .    We are unable to comprehend how that fact could charge them with notice that Stackweather

was acting fraudulently toward his principal.    A man is always bound by the fraudulent acts of his own agent, perpetrated on a third person whilst acting under his authority in reference to the subject of his agency; but we are aware of no rule, nor any adjudged case, which holds that a party can ever be bound by the fraudulent acts of another man's agent.    And why should they ?  They do not appoint the agent.   They confer upon him no authority, and do no act that, in morals or in law, should render them liable for the acts of another man's agent upon whom they conferred no power.''

The case cited by my learned brother (*Panama Co.* v. *India Rubber Co.*, L. R., 10 Ch. App., 515, s.c. 14 Eng. Rep., Moak, 759) was a case of flagrant fraud, clearly proved to have been shared in by the third party—a case of one party, in effect, bribing the agent of the other party, falling under the cases classed by Mechem (§ 797, where it is cited), '' where the third person conspires with the agent.''    Nor must this case be confounded with that other and wholly different category, where the agent pays his own debt with the principal's money, the creditor of the agent knowing it was the principal's money —finely illustrated by the cases cited in the note to *Gerard* v. *McCormick*, 14 Law. Rep. Ann., 234—a category in which, as stated in *Smith* v. *James*, 53 Ark., 137, ''it is only necessary that the third party should know that the party with whom he dealt was an agent, in order to be apprised that the transaction was beyond the scope of his authority.''   Here Hill knew that Patty was Mrs. Jeffries' agent, and that the money of Mrs. Jeffries was loaned to him, and that, with that money, made his, Hill's, own by the borrowing, he paid off Patty's trust deed.   How is it possible to safely say that, from these meager facts alone, the court below should have found that Patty had, in the dealing, an individual interest adverse to his principal, within the knowledge of Hill, and that Hill conspired with Patty to defraud his principal, Mrs. Jeffries, especially in view of the settled rule that fraud must be established

by clear and convincing proof? It is perfectly clear that both Hill and Patty honestly believed the trust deed to Mrs. Jeffries was not only a valid, but an abundantly sufficient, security when given. If it had been, would any court hold that Patty's interest in paying his debt was adverse to Mrs. Jeffries, whom he had abundantly secured, much less that Hill aided Patty to defraud her? Since it has turned out that it was invalid, can the mere fact that it has so turned out, make his interest adverse? But, even if that were conceded, does the further necessary fact appear that Hill then, at the time, knew all this, and conspired with Patty to defraud Mrs. Jeffries? The learned chancellor below—one of the ablest, most conscientiously painstaking, and accurate judges who ever adorned the bench of this state—has found the issue of fact on this branch of the case against appellant, and in my judgment the decree should be affirmed.

I sympathize deeply with the feeling that Hill should not keep a home he has not paid for, but I am restrained from yielding to this prompting by the reflection that a general rule for the administration of justice, according to the established principles of law, though not availing against the injustice of a particular instance, is better than the judicial chaos which would result from its nonobservance. Human equity corrects the defects of human law, arising by means of its universality. That equity which is administered by the Omniscient alone, is alone equal to meting out absolute right in every case.

I regret that I am forced to dissent from my brothers, but, as the difference of opinion entertained by me amounts to conviction, no other course is open to me.